1
2
3
4
5
6
7
8

## UNITED STATES DISTRICT COURT

9

## SOUTHERN DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| THE ESTATE OF ANGEL LOPEZ by and through its successors in interest, LYDIA LOPEZ; LYDIA LOPEZ; ANGEL LOPEZ, JR. and HECTOR LOPEZ, by and through their guardian *ad litem*, LYDIA LOPEZ,<br><br>                     Plaintiffs,<br><br>   v.<br><br>LOU TORRES; ANDREW MILLS; SCOTT HOLSLAG; STEVE RIDDLE; LT LEOS; ALEC POJAS; and DOES 2-30,<br><br>                    Defendants. | CASE NO. 15-CV-0111-GPC-MDD<br><br>**ORDER VACATING HEARING AND GRANTING DEFENDANT TORRES'S MOTION TO DISMISS**<br><br>[ECF No. 12] |

11
12
13
14
15
16
17
18
19
20

## INTRODUCTION

21       Presently before the Court is a Motion to Dismiss filed by Defendant Lou Torres.

22 (ECF No. 12.)  The parties have fully briefed the motion.  (ECF Nos. 14, 15.)  Pursuant

23 to Civil Local Rule 7.1(d)(1), the Court finds the matter suitable for adjudication

24 without oral argument.  For the following reasons, the Court **GRANTS** Defendant

25 Torres's Motion to Dismiss.

26 ///

27 ///

28 ///

1

**FACTUAL BACKGROUND**

2    This case arises from the shooting death of Angel Lopez ("Lopez") on January

3  17, 2013.  Plaintiffs allege that shortly after 8:00 a.m. on January 17, 2013, a heroin

4  dealer and police informant named Alec Pojas ("Pojas") placed a telephone call to

5  Defendant Lou Torres ("Agent Torres"), a parole agent employed by the California

6  Department of Corrections and Rehabilitation.  (ECF No. 1, Compl. ¶¶ 9, 14, 29, 30.)

7  Pojas refused to provide his name, but told Agent Torres that Lopez and his father,

8  Alex Lopez, had kidnapped Pojas and held him prisoner in Apartment 58 of 5444

9  Reservoir Drive, San Diego, California, for over four weeks.  (¶¶ 31, 33-35.)  During

10 that time, Lopez and his father allegedly tortured Pojas, leaving his blood on the floor.

11 (¶¶ 36-37.)  Pojas informed Agent Torres that Lopez and his father possessed an AK-47

12 and that Lopez always carried a .25 caliber pistol on his person.  (¶¶ 40-41.)  Pojas

13 claimed he had finally escaped the night before by jumping from a third floor balcony.

14 (¶ 38.)

15   Plaintiffs allege that Agent Torres provided the information he learned from

16 Pojas to Andrew Mills, a captain in the Eastern Division of the San Diego Police

17 Department ("Captain Mills").  (¶ 46.)  Captain Mills and Agent Torres then relayed

18 the information to Lieutenant Leos ("Lt. Leos") and Sergeant Scott Holslag ("Sgt.

19 Holslag"), also of the San Diego Police Department.  (¶¶ 11, 13, 47.)  According to

20 Plaintiffs, instead of investigating the reliability and accuracy of the information

21 provided by Pojas, Sgt. Holslag, with Captain Mills's concurrence, contacted the San

22 Diego Police Department's SWAT unit.  (¶ 48.)  The SWAT officers allegedly were

23 told that a kidnap victim likely was still present in Apartment 58 and was being held

24 by "cartel" members who were armed with AK-47s.  (¶ 57.)

25   Pojas contacted Agent Torres several more times during the morning of January

26 17, 2013, once informing Agent Torres that he knew Lopez and his father were

27 planning to leave Apartment 58 within forty-five minutes because Pojas had scheduled

28 a meeting with them.  (¶¶ 58, 60.)  Plaintiffs allege that Captain Mills, Lt. Leos, and

Sgt. Holslag, "in joint venture with Torres and [Defendant Steve] Riddle," conveyed this information to the SWAT unit and asked them to seize and arrest Lopez. (¶¶ 59, 62.)

Later that morning, SWAT units arrived at 5444 Reservoir Drive. (¶ 64.) At 12:56 p.m., a car occupied by Lopez and Xavier Lenyoun, the lessee of Apartment 58, left the parking lot. (¶ 66.) The SWAT unit maneuvered to stop the car and then pointed machine guns at the occupants. (¶¶ 66-7.) Lopez and Xavier Lenyoun fled back into the building. (¶¶ 67, 69.) SWAT officers entered the building and Officer Kristopher Walb ("Officer Walb") encountered Lopez in a third floor hallway. (¶¶ 68-9.). Officer Walb shouted at Lopez to get down, and Plaintiffs allege that Lopez complied and was in a kneeling position when Officer Walb shot him twice in the back and once in the back of the head with a MP-5 submachine gun. (¶¶ 69-70.) Officer Walb later explained in a statement to other police officers that he remembered being told earlier that day that the suspect was always armed with a .25 caliber pistol and that thought went through his mind just before he shot and killed Lopez. (¶ 72.) Plaintiffs allege that SWAT officers did not administer first aid to Lopez because they believed persons armed with AK-47s were in nearby Apartment 58. (¶ 74.)

Subsequent investigation revealed that Lopez was not armed, no one was in Apartment 58, there were no AK-47s in the apartment, and Pojas's blood was not on the apartment floor. (¶¶ 71, 77.) None of the neighbors in the apartment building had ever heard any unusual noises or screaming coming from Apartment 58. (¶ 51.) Further, the balcony of Apartment 58 was observed to be approximately 23 to 25 feet above the ground, making it exceedingly unlikely that Pojas could have jumped without sustaining a broken leg or worse. (¶ 54.) Plaintiffs allege that Pojas relayed all of this false information to Agent Torres in order to obtain revenge against Lopez for not paying Pojas for some heroin. (¶¶ 31-2, 77.) Pojas knew Lopez was on parole and wanted for a parole violation and sought to manipulate police into harming Lopez. (*Id.*) Police officers did not locate and identify Pojas until the next day. (¶ 89.)

## PROCEDURAL BACKGROUND

On January 16, 2015, Plaintiffs filed the instant case, alleging various claims under 42. U.S.C. § 1983, as well as wrongful death pursuant to California Civil Code § 377.60 *et seq.*.[1]  (ECF No. 1.)  On January 29, 2015, the Court low-numbered the related case of *The Estate of Angel Lopez, et al. v. City of San Diego, et al.*, 13cv2240-GPC-MDD, in which this Court's Order Granting in Part and Denying in Part Defendants' Motion for Summary Judgment is under review with the Ninth Circuit. (*See* 13cv2240-GPC-MDD, ECF. Nos. 59-60.)

On February 17, 2015, Defendant Torres moved to dismiss the Complaint. (ECF No. 12.)  Plaintiffs timely opposed the motion on March 27, 2015 (ECF No. 14), and Defendant Torres filed a reply on April 10, 2015 (ECF No. 15).

## LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint.  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal is warranted under Rule12(b)(6) where the complaint lacks a cognizable legal theory.  *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984); *see also Neitzke v. Williams*, 490 U.S. 319, 326 (1989) ("Rule12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law"). Alternatively, a complaint may be dismissed where it presents a cognizable legal theory yet fails to plead essential facts under that theory.  *Robertson*, 749 F.2d at 534.  While a plaintiff need not give "detailed factual allegations," a plaintiff must plead sufficient facts that, if true, "raise a right to relief above the speculative level."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  A claim is facially plausible when the factual

---

[1]  The state law claim for wrongful death is against Defendant Pojas only.  (ECF No. 1.)

allegations permit "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In other words, "the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

In reviewing a motion to dismiss under Rule 12(b)(6), the court must assume the truth of all factual allegations and must construe all inferences from them in the light most favorable to the nonmoving party. *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002); *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996). Legal conclusions, however, need not be taken as true merely because they are cast in the form of factual allegations. *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1200 (9th Cir. 2003); *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981). When ruling on a motion to dismiss, the court may consider the facts alleged in the complaint, documents attached to the complaint, documents relied upon but not attached to the complaint when authenticity is not contested, and matters of which the court takes judicial notice. *Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001).

## DISCUSSION

### A.    Excessive Force

Defendant argues that Plaintiffs' claim for excessive force fails to state a viable cause of action because Agent Torres was not an integral participant in the alleged use of excessive force. (ECF No. 12-1 at 4.) Further, Defendant contends that Plaintiffs fail to adequately plead causation. (*Id.*) To the extent Plaintiffs seek to impose liability on Agent Torres under a "joint venture" theory, Defendant contends that this claim also fails. (*Id.*)

Excessive force claims relating to police conduct during an arrest must be analyzed under the Fourth Amendment and its reasonableness standard. *Plumhoff v.*

*Rickard,* __ U.S. __, 134 S. Ct. 2012, 2020 (2014); *Graham v. Connor*, 490 U.S. 386, 394-95 (1989).  Proper application of the reasonableness standard requires a court to assess the specific facts of the case, "including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396.  However, this list of factors is not exclusive; the court must "[]examine the totality of the circumstances and consider 'whatever specific factors may be appropriate in a particular case, whether or not listed in *Graham*.'"  *Mattos v. Agarano*, 661 F.3rd 433, 441 (9th Cir. 2011) (*quoting Bryan v. MacPherson*, 630 F.3d 805, 826 (9th Cir. 2010)).   The standard is to be applied objectively, without consideration of the officers' "underlying intent or motivation." *Graham*, 490 U.S. at 397.

The Supreme Court further explained in *Graham* that the analysis must be whether the force was reasonable at the moment it was applied.  *Id.* at 396.  In other words, "[t]he 'reasonableness' of a particular use of force must be judged from the perpective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.*

## 1.   Agent Torres was not an Integral Participant

Because it is undisputed that Officer Walb shot and killed Lopez, Plaintiffs' facts only support his excessive force claim against Agent Lopez if they show that he was an integral participant in the force used.  The "integral participant" doctrine "extends liability to those actors who were integral participants in the constitutional violation, even if they did not directly engage in the unconstitutional conduct themselves." *Hopkins v. Bonvicino*, 573 F.3d 752, 770 (9th Cir. 2009).  This requires "some fundamental involvement in the conduct that allegedly caused the violation." *Blankenhorn v. City of Orange,* 485 F.3d 463, 481 n.12 (9th Cir. 2007) (*citing Boyd v. Benton Cnty.,* 374 F.3d 773, 780 (9th Cir. 2004) (finding liable for excessive force every officer who provided armed backup for the officer who gained entry to a

suspect's home by unconstitutionally deploying a flash-bang device because "every officer participated in some meaningful way" in the arrest and "every officer was aware of the decision to use the flash-bang, did not object to it, and participated in the search operation knowing the flashbang was to be deployed")).  An officer who was a "mere bystander" or who simply was part a "team" that collectively caused the constitutional violation is not on that basis alone considered fundamentally involved.  *See Chuman v. Wright*, 76 F.3d 292, 294-95 (9th Cir. 1996).

Plaintiffs' Complaint bases Agent Torres's liability on the fact that he failed to properly analyze and investigate information obtained from an anonymous informant, which he knew or should have known was false, before conveying it to the police department with reckless or deliberate indifference to its truth or falsity.  (ECF No. 14 (citing ECF No. 1 ¶ 102.))  More specifically, by informing Captain Mills that Lopez was armed with a pistol, had kidnapped someone, and could be found in or near an apartment that contained an AK-47, Plaintiffs allege that Agent Torres "set in motion the acts which led to the death of Angel Lopez." (ECF No. 1 ¶ 103.)  Though Plaintiffs initially allege that Sgt. Holslag, "with the concurrence of Mills," is the one who requested SWAT involvement, (*see* ECF No. 1 ¶48), Plaintiffs state later in the Complaint that "Mills, Leos, and Holslag, with the participation in this joint venture of Torres and Riddle, requested the assistance of the SWAT unit." (*Id.* ¶ 62.)  Though Agent Torres never went to 5444 Reservoir Drive on the morning of January 17, 2013, Plaintiffs contend that Agent Torres knew, or should have known, that his improper actions would cause police officers to use excessive force against Lopez. (ECF No. 14 at 10-11.)

Even accepting all of Plaintiffs' allegations as true, as the Court is bound to do (*see Thompson*, 295 F.3d at 895), the Court finds no law supporting Plaintiffs' assertion that an officer who was not at the scene of the alleged excessive use of force nonetheless can be considered an "integral participant" in the constitutional deprivation. *Cf. Torres v. City of Los Angeles*, 548 F.3d 1197 (9th Cir. 2008) (finding

that detective who conducted investigation and provided information to arresting officers was not an integral participant in the unlawful arrest because she was not present when the arrest was made); *Bravo v. City of Santa Maria*, 665 F.3d 1076, 1090 (9th Cir. 2011) (concluding that officers who conducted a background investigation, but were not present during SWAT unit's unlawful residential search, were not integral participants); *Cunningham v. Gates*, 229 F.3d 1271, 1290 (9th Cir. 2000), *as amended* (Oct. 31, 2000) (finding that non-present officers could not be held liable for failing to intercede to prevent their fellow officers from shooting the plaintiff); *Monteilh v. County of Los Angeles*, 820 F. Supp. 2d 1081, 1090 (C.D. Cal. 2011) (confirming that officers must "provide some affirmative physical support at the scene of the alleged violation..." in order to be considered integral participants).  It is undisputed that Agent Torres was not at the scene when Officer Walb fired on Lopez.  The Complaint does not allege that Agent Torres instructed the SWAT officers to enter the apartment building or to shoot Lopez.  Agent Torres did not witness Lopez's actions and was not in a position to assess whether Lopez posed a safety risk to officers or whether Lopez was attempting to evade arrest.  Without being present at the scene, Agent Torres also could not intervene to stop the SWAT unit's use of force.[2]  Thus, Plaintiffs fail to allege sufficient facts to support their excessive force claim.

**2.     Agent Torres was not the Proximate Cause of Lopez's Death**

Defendant also argues that supplying information to police about a parole violator does not constitute causation for purposes of an excessive force claim and, regardless, the SWAT unit's actions were an intervening cause.  (ECF No. 12-1 at 4, 7-8.)   Plaintiffs counter that a causal connection was established because Agent

---

[2]   Plaintiffs also do not allege that Agent Torres had any supervisory role over the SWAT officers such that he had a responsibility to train the officers or ensure that the operation was properly executed.  *See Taylor v. List,* 880 F.2d 1040, 1045 (9th Cir. 1989) ("[a] supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them. There is no respondeat superior liability under section 1983").

1  Torres's actions were the "moving force" behind the series of events that lead to the
2  foreseeable harm of Lopez being shot by a SWAT officer.  (ECF No. 14 at 12.)

3      Section 1983 creates a cause of action based on personal participation by a
4  defendant.  *Taylor*, 880 F.2d at 1045 ("Liability under section 1983 arises only upon
5  a showing of personal participation by the defendant").  A person deprives another "of
6  a constitutional right, within the meaning of section 1983, if he does an affirmative act,
7  participates in another's affirmative acts, or omits to perform an act which he is legally
8  required to do that causes the deprivation."  *Johnson v. Duffy*, 588 F.2d 740, 743 (9th
9  Cir. 1978).  "To meet this causation requirement, the plaintiff must establish both
10 causation-in-fact and proximate causation."  *Harper v. City of Los Angeles*, 533 F.3d
11 1010, 1026 (9th Cir. 2008).  "The inquiry into causation must be individualized and
12 focus on the duties and responsibilities of each individual defendant whose acts or
13 omissions are alleged to have caused the constitutional deprivation."  *Leer v. Murphy*,
14 844 F.2d 628, 633 (9th Cir. 1988).

15     Plaintiffs contend that Agent Torres set in motion the sequence of events that
16 resulted in a SWAT officer shooting Lopez and, therefore, was the proximate cause of
17 his death.  (ECF No. 14 at 12-13.)  Plaintiffs rely on *Johnson*, 588 F.2d at 743-44,
18 wherein the Ninth Circuit held that an individual who did not personally participate in
19 a constitutional deprivation may nonetheless be found liable under section 1983 if he
20 or she "set[s] in motion a series of acts by others which the actor knows or reasonably
21 should know would cause others to inflict the constitutional injury."  (*See* ECF No. 14
22 at 12.)  This argument fails for two reasons.  First, it is not reasonable to say that Agent
23 Torres knew or should have known that providing a police officer with the name and
24 anticipated whereabouts of a wanted parole violator—even if he also conveyed that the
25 individual was armed with a pistol and an AK-47, was in a cartel, had held someone
26 hostage and tortured him for four weeks, and still might have a hostage—would result
27 in a SWAT officer shooting Lopez in the back of the head.  This Court is not prepared
28 to set the precedent that the mere act of calling in SWAT (a decision which Plaintiffs

do not allege to be within Agent Torres's authority to make anyway) should reasonably be anticipated to result in the use of excessive force.  Second, Agent Lopez was not a supervisor, and thus not the individual responsible for deciding what, if any, investigation the police department would undertake or whether to send in the SWAT unit.  See *Motley v. Parks,* 432 F.3d 1072, 1081 (9th Cir. 2005) (confirming that a supervisor who was the moving force behind acts he knew or reasonably should have known would result in a constitutional injury can be found liable, even when he did not directly participate in the acts), *overruled on other grounds by United States v. King,* 687 F.3d 1189 (9th Cir. 2012).

Furthermore, even assuming Agent Torres caused the series of acts to be set in motion that ultimately lead to Lopez's shooting, he was not the proximate cause of Lopez's death because the actions of the SWAT unit were an intervening event. *(See* ECF No. 12-1 at 7.)  Traditional tort law's dictate that an abnormal or unforeseen action that intervenes to break the chain of proximate causality applies in section 1983 actions. *Van Ort v. Estate of Stanewich,* 92 F.3d 831, 837 (9th Cir. 1996); *see also Gutierrez-Rodriguez v. Cartagena*, 882 F.2d 553, 561 (1st Cir. 1989) (confirming that in a § 1983 action, a superseding intervening cause that is reasonably foreseeable will not relieve a defendant of liability, but an "'unforeseen and abnormal' intervention" will break the chain of proximate causation) (*quoting Marshall v. Perez Arzuaga*, 828 F.2d 845, 848 (1st Cir.1987), *cert. denied*, 484 U.S. 1065 (1988)).  It was the SWAT team's decision to use submachine guns, to pursue Lopez when he fled into the apartment building, and to shoot him when he allegedly was kneeling in compliance with the Officer Walb's order.  Agent Torres could not have foreseen that highly trained SWAT officers allegedly would use excessive force in attempting to arrest Lopez.  Therefore, the Court finds that Plaintiffs have failed to sufficiently plead facts

///

///

///

demonstrating that Agent Torres was the proximate cause of Lopez's shooting.[3]

Accordingly, the Court **GRANTS** Defendant Torres's motion to dismiss Plaintiffs' excessive force claim.

**B.     Wrongful Death**

Plaintiffs' second cause of action is for wrongful death under 42 U.S.C. § 1983. (ECF No. 1 at 16-17.)  The parties dispute whether a wrongful death claim may be brought pursuant to 42 U.S.C. §1983.  (ECF No. 12-1 at 9; ECF No. 14 at 18-19.)

Defendant contends that wrongful death is a state law claim, which cannot be maintained for two reasons.  (ECF No. 12 at 9-10.)  First, a valid §1983 claim must allege violation of a right secured by the Constitution and the laws of the United States. (*Id.* at 9 (citing *West v. Atkins*, 487 U.S. 42, 48 (1988))).   Second, to the extent Plaintiffs actually seek to assert a state law claim (instead of a claim under §1983), this too fails because Plaintiffs must plead compliance with California's Government Claims Act in order to do so, and Plaintiffs have not.  (*Id.*)  Plaintiffs confirm that they are not attempting to assert a state law claim and, thus, had no obligation to comply with California's Government Claims Act.  (ECF No. 14 at 18-19.)  But, relying on *Smith v. City of Fontana*, 818 F.2d 1411, 1416-17 (9th Cir. 1987) and *Chaudhry v. City of Los Angeles*, 751 F.3d 1096, 1103 (9th Cir. 2014), argue that a wrongful death action may, in fact, be pled under § 1983.  (ECF No. 14 at 18-19.)

The confusion seems to be in that some courts (primarily in unpublished

---

[3] For the same reasons, the Court rejects Plaintiffs' argument that Agent Torres remains liable by virtue of his participation in a "joint venture" to deploy the SWAT unit.  (ECF Nos. 62-63, 102.) As an initial matter, the term "joint venture" implies a conspiracy-like meeting of the minds, which Plaintiff has not alleged plausibly to have occurred.  *See Twombly*, 550 U.S. at 556 (holding that bare assertions of a conspiracy will not satisfy the plausibility requirement at the pleading stage; the complaint must contain "enough factual matter (taken as true) to suggest that an agreement was made"); *Buckley v. Gomez*, 36 F. Supp. 2d 1216, 1221 (S.D. Cal. 1997) ("Where a complaint contains merely conclusory, vague or general allegations of a conspiracy to deprive a person of constitutional rights, it must be dismissed").  And, even assuming Agent Torres participated in the decision to call in SWAT, he could not reasonably have anticipated that the SWAT officers would use excessive force. Officer Walb's alleged acts were an intervening cause, breaking the causal connection, such that Agent Torres was not the proximate cause of the shooting.

dispositions) have allowed claims for wrongful death under § 1983 to proceed.  In *Arce v. Blackwell*, 294 Fed. Appx. 259 (9th Cir. 2008), the court described the plaintiff's action as "a wrongful death civil rights action . . . under 42 U.S.C. § 1983."  Though the plaintiff alleged that the defendant deprived her deceased husband of his rights under the Fourth and Fourteenth Amendments, the court analyzed the plaintiff's claim as an excessive force claim arising under the Fourth Amendment.  *Arce*, 294 Fed. App. at 260-61.  Likewise, in *Gaxiola v. City of Richmond Police Dep't*, 131 Fed. Appx. 508 (9th Cir. 2005), the plaintiff brought a "42 U.S.C. § 1983 wrongful death action."  Again, despite the styling of the complaint, the court analyzed the claim as a Fourth Amendment excessive force claim.  *Gaxiola*, 131 Fed. Appx. at 509.  In *Estate of Manzo v. Cnty. of San Diego*, No. 06-60, 2008 WL 4093818, at *1-*3 (S.D. Cal. Sept. 3, 2008), the decedent's estate alleged causes of action for wrongful death under § 1983 and state law.  The court analyzed the § 1983 wrongful death claim as a Fourth Amendment excessive force claim.  *Estate of Manzo,* 2008 WL 4093818, at *1-*3.  What is clear from these cases is that even if the claim was described in the pleadings as a wrongful death claim under section 1983, the courts only allowed such claims to be maintained if they were construed as Fourth Amendment excessive force claims.

To the extent Plaintiffs rely on *Smith v. City of Fontana*, 818 F.2d 1411, 1416-17 (9th Cir. 1987) and *Chaudhry v. City of Los Angeles*, 751 F.3d 1096, 1103 (9th Cir. 2014), to show otherwise, Plaintiffs' argument fails.  These cases confirm that Lopez's estate may bring a survivor action under § 1983 to vindicate his right to be free from excessive force under the Fourth Amendment.  They do not stand for the proposition that his heirs may pursue a separate, federal cause of action for wrongful death under § 1983.[4]

---

[4]  Some of the confusion with this claim also appears to center around the difference between wrongful death actions and survivor actions.  Wrongful death actions involve claims by relatives of the decedent to recover for their own injuries, caused by the death of their loved one.  *See* Cal. Civ. Proc. Code § 377.60 *et seq.* (West, Westlaw through 2015 Reg. Sess.).  Survivor actions are based upon the decedent's own individual claims that he would have been entitled to file for his own injuries.

1  In sum, the Court finds that Plaintiffs can only proceed with a wrongful death

2  cause of action under § 1983 if the Court construes it as an excessive force claim under

3  the Fourth Amendment.  Even if the Court does that here, it will be of no avail because

4  the Court has already determined that Plaintiffs have failed to state a claim for

5  excessive force.  Thus, Plaintiffs' second claim for relief also must be dismissed.

6  Accordingly, the Court **GRANTS** Defendant Torres's motion to dismiss

7  Plaintiffs' wrongful death claim.

8  **C.   Right of Association**

9  Defendant argues that Plaintiffs fail to state a claim for right of association

10  because this action is derivative of the claims of the decedent and Plaintiffs have failed

11  to state a claim for excessive force.  (ECF No. 12-1 at 10.)   Alternatively, Defendant

12  contends that Agent Torres's actions do not satisfy the shock the conscience standard

13  required under the Fourteenth Amendment.  (ECF No. 12-1 at 10.)  Plaintiffs counter

---

*See* Cal. Civ. Proc. Code § 377.10 *et seq.*  Both arise under state law.  The difference, essentially, is a question of to whom the damages accrue.

However, only a survivor action may be brought in a 42 U.S.C. § 1983 action.

 "Fourth Amendment rights are personal rights which ... may not be vicariously asserted." *Alderman v. United States*, 394 U.S. 165, 174, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969). Thus, the general rule is that only the person whose Fourth Amendment rights were violated can sue to vindicate those rights. *Smith v. City of Fontana*, 818 F.2d 1411, 1417 (9th Cir.1987). In § 1983 actions, however, the survivors of an individual killed as a result of an officer's excessive use of force may assert a Fourth Amendment claim on that individual's behalf if the relevant state's law authorizes a survival action. 42 U.S.C. § 1988(a); *Smith,* 818 F.2d at 1416-17.

*Moreland v. Las Vegas Metro. Police Dep't*, 159 F.3d 365, 369 (9th Cir. 1998), *as amended* (Nov. 24, 1998). In this case, Plaintiffs allege that "all Defendants deprived Angel Lopez of his rights under the United States Constitution to be free from the use of excessive force by law enforcement and punishment without due process." (ECF No. 1 § 111.) Thus, it is clear that the constitutional violation upon which the section 1983 action in Plaintiffs' second cause of action is based is use of excessive force.  Plaintiffs' second claim is brought on behalf of "All Plaintiffs."  Yet if the underlying constitutional violation alleged is excessive force, then the § 1983 claim may not be brought as a wrongful death action to vindicate the rights of Lopez's wife and children because Fourth Amendment rights are personal to the decedent. *Cf. Moreland*, 159 F.3d at 369. This claim must be dismissed. To the extent Plaintiffs also allege wrongful death on behalf of Lopez's estate, that claim would be duplicative of Plaintiffs' first claim for relief and fails for the reasons set forth in the preceding section of this Court's order. Thus, Plaintiffs' second cause of action must be dismissed in its entirety.

that the standard for asserting a right of association claim is the lower standard of deliberate indifference, which Plaintiffs contend Agent Torres's actions met. (ECF No. 14 at 19.)

Defendant is correct that the same allegations of excessive force giving rise to Lopez's claim, via his estate, also give his spouse and children a substantive due process claim based on their loss of his society and companionship. *See Smith v. City of Fontana*, 818 F.2d 1411, 1419-20 (9th Cir. 1987) *overruled on other grounds by Hodgers-Durgin v. de la Vina*, 199 F.3d 1037, 1040 n.1 (9th Cir. 1999). For a loss of association claim to be actionable, the claim "must be based on underlying wrongful governmental conduct that amounts to a constitutional deprivation." *Corales v. Bennett,* 488 F. Supp. 2d 975, 986 (C.D. Cal. 2007), *aff'd*, 567 F.3d 554 (9th Cir. 2009). If the court finds that "no underlying dependent constitutional deprivation" was demonstrated, the family relations substantive due process claim also must fail. *Corales v. Bennett*, 567 F.3d 554, 569 n.11 (9th Cir. 2009). Because the Court finds that Plaintiffs' underlying Fourth Amendment excessive force claim fails, the instant right of association claim also fails. *See Corales*, 488 F. Supp. 2d at 986 ("In the absence of an underlying constitutional violation, plaintiffs' family relations claim fails").

Furthermore, Plaintiffs fail to allege facts sufficient to set forth a viable substantive due process cause of action. Spouses and children may assert Fourteenth Amendment substantive due process claims if official conduct deprives them of their liberty interest in the companionship and society of their spouse or parent. *Lemire v. Cal. Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1075 (9th Cir. 2013); *Morales v. City of Delano*, 852 F. Supp. 2d 1253, 1273-74 (E.D. Cal. 2012). The Fourteenth Amendment's Due Process Clause creates a right to be free from "executive abuse of power . . . which shocks the conscience." *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998). "In determining whether excessive force shocks the conscience, the court must first ask whether the circumstances are such that actual deliberation by the

officer is practical." *Wilkinson v. Torres*, 610 F.3d 546, 554 (9th Cir. 2010) (internal quotations and alterations omitted).  If the officer in question was faced with a time frame where actual deliberation was practical, a plaintiff may establish a Fourteenth Amendment violation by showing that the officer "acted with deliberate indifference." *Porter v. Osborn*, 546 F.3d 1131, 1137 (9th Cir. 2008). Otherwise, if the officer "faced an evolving set of circumstances that took place over a short time period necessitating 'fast action,'" a plaintiff must make a higher showing that the officer "acted with a purpose to harm" the plaintiff.  *Id.* at 1139 (quoting *Lewis*, 523 U.S. at 853).  "[T]he overarching test under either is whether the officer's conduct 'shocks the conscience.'" *Id.* at 1139.

Because roughly five hours elapsed between when Pojas first contacted Agent Torres and when the SWAT officer shot Lopez (see ECF No. 1 at ¶¶ 29 & 66), Agent Torres had time to deliberate.  Under these circumstances, the analysis proceeds under the deliberate indifference standard.  *See Porter*, 546 F.3d at 1137.  A finding of deliberate indifference requires that the "official knows of and disregards an excessive risk." Farmer v. Brennan, 511 U.S. 825, 837 (1994); *see also Bd. of Cnty. Com'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 415 (1997) (finding in case involving excessive force allegation that showing of deliberate indifference must reflect a "conscious disregard of an obvious risk").  Plaintiffs argue Agent Torres had time to investigate Pojas's claims, interview witnesses, and go to the scene of the alleged kidnapping and look at the third floor window.  (ECF No. 14 at 19.)  While that may be true, it does not follow that by failing to do so, Agent Torres consciously disregarded an excessive risk.  Such a holding once again would presume the foreseeable excessive risk to be that SWAT officers would use excessive force.  The law does not support a finding that calling in an advanced tactical team, in and of itself, creates an excessive risk that the team will use more force than necessary.  Therefore, the Court finds that Agent Torres's conduct did not shock the conscious. *See Porter*, 546 F.3d at 1139.

Accordingly, the Court finds that Plaintiffs failed to plead sufficient facts showing a Fourteenth Amendment violation and **GRANTS** Defendant Torres's motion to dismiss Plaintiffs' third claim for right of association.

**D.    Seizure Without Probable Cause**

In his fourth claim for relief, Plaintiffs allege that Defendant seized him without probable cause in violation of the Fourth Amendment. (ECF No. 1 ¶ 18.)  Defendant argues that the Court must dismiss this claim because Plaintiffs concede that Lopez was wanted for a parole violation and probable cause is not required to lawfully arrest a parolee in violation of parole. (ECF No. 12-1 at 11-12.)

The Fourth Amendment guarantees that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const., amend. IV.  Police officers also must have probable cause before making a warrantless arrest.  *Ramirez v. City of Buena Park,* 560 F.3d 1012, 1023 (9th Cir. 2009).

An exception to this rule exists for parolees, however.  While parolees are protected against unreasonable searches and seizures, their Fourth Amendment rights are not as extensive as those of other citizens.  *Sherman v. U.S. Parole Comm'n*, 502 F.3d 869, 873 (9th Cir. 2007).  "Under California and federal law, probable cause is not required to arrest a parolee for a violation of parole. Warrantless arrests of parole violators are also valid."  *Id.* at 884 (*quoting United States v. Butcher*, 926 F.2d 811, 814 (9th Cir. 1991)).  The rationale for this is that "a parolee 'remains under legal custody,' [so] 'a parole arrest [is] more like a mere transfer of the subject from constructive custody into actual or physical custody, rather than like an arrest of a private individual who is the suspect of a crime.'" *Id. (*quoting *United States v. Rabb,* 752 F.2d 1320, 1324 (9th Cir. 1984) (internal quotation marks omitted)).

Thus, if an officer "reasonably believes a parolee is in violation of his parole, the

officer may arrest the parolee."[5] *Rabb,* 752 F.2d at 1324, *abrogated in part on other grounds by Bourjaily v. United States*, 483 U.S. 171 (1987). "A parole officer is not required personally to effect the arrest or search of his parolee to validate the arrest or search." *United States v. Butcher*, 926 F.2d 811, 814 (9th Cir. 1991). The seizure remains legal even if it is carried out by other officers. *See id.* at 814-15 (agreeing with the California Court of Appeal's determination in *People v. Kanos,* 14 Cal. App. 3d 642, 649 (2nd Distr. 1971) "that '[p]olice assistance properly may be requested by parole agents for providing protection and for aiding in the apprehension and investigation of a parole violator'").

Here, Plaintiffs concede that Lopez was wanted for a parole violation. (ECF No. 1 ¶ 32.) As such, he was subject to seizure without probable cause. *Sherman,* 502 F.3d at 884. For Fourth Amendment purposes, it is immaterial that Agent Torres asked the San Diego Police Department to effectuate the arrest instead of doing it himself. *See Butcher*, 926 F.2d at 814-15. The Court, therefore, finds that Plaintiffs fail to state a claim for seizure without probable cause.[6]

Accordingly, the Court **GRANTS** Defendant Torres's motion to dismiss Plaintiffs' fourth claim for relief.

**E.   Due Process Claims**

Defendant argues that Plaintiffs' fifth and sixth causes of action for due process violations must be dismissed as duplicative of their Fourth Amendment claims. (ECF

---

[5] The same is true under California law, which expressly requires prisoners being released on parole to be notified that they are "subject to search or seizure by a probation or parole officer *or other peace officer* at any time of the day or night, with or without a search warrant or with or without cause." Cal. Penal Code Ann. § 3067(b)(3) (West, Westlaw through 2015 Reg. Sess.) (emphasis added).

[6] To the extent Plaintiffs argue that Agent Torres had an improper purpose for the arrest because he relied on Pojas's false information, the Court finds that this claim fails as well. "[P]robable cause to believe that a person has committed any crime will preclude a false arrest claim, even if the person was arrested on additional or different charges for which there was no probable cause." *Ewing v. City of Stockton,* 588 F.3d 1218, 1230 n.19 (9th Cir. 2009) *(quoting Holmes v. Village of Hoffman Estate,* 511 F.3d 673, 682 (7th Cir. 2007)). In this case, Lopez was wanted for being in violation of his parole, so the officers had a lawful basis for arresting him. Because there was a lawful basis for the arrest, it is irrelevant that there may have been other, invalid grounds for his arrest.

No. 12-1 at 13-15.)  Plaintiffs contend that Agent Torres violated Lopez's due process rights and his right to a jury trial under the Fifth Amendment, which amendment Plaintiffs contend is made applicable to state actors by the Fourteenth Amendment. (ECF No. 1. ¶¶ 127-29, 132.)

Plaintiffs' fifth cause of action alleges that Agent Torres violated the Fifth Amendment by depriving Lopez of life without due process of law.  (ECF No. 1 ¶¶ 127-28.)  "The Due Process Clause of the Fifth Amendment . . . appl[ies] only to actions of the federal government-not to those of state or local governments." *Lee v. City of L.A.*, 250 F.3d 668, 687 (9th Cir. 2001) (*citing Schweiker v. Wilson*, 450 U.S. 221, 227 (1981)).  Plaintiffs have not alleged that Agent Lopez is a federal employee. To the contrary, Plaintiffs' Complaint lists Agent Torres as "a parole agent employed by the California Department of Corrections and Rehabilitation, Division of Adult Parole Operations."  (ECF No. 1 ¶ 9.)  Because Plaintiffs have only alleged actions taken by state officials[7], Plaintiffs fail to state a claim under the Fifth Amendment.

In his sixth cause of action, Plaintiffs allege that Agent Torres's actions resulted in the imposition of punishment without trial.  (ECF No. 1 ¶ 132.)  Agent Torres responds that this claim must be dismissed because claims arising from excessive force must be prosecuted under the Fourth Amendment, not the Fourteenth Amendment. (ECF No. 12-1 at 14.)  Plaintiffs counter that in light of the fact that Agent Torres argues that he is not liable under the Fourth Amendment—because he was not physically present to inflict the use of force—Plaintiffs are entitled to bring a substantive due process claim under the Fourteenth Amendment.  (ECF No. 14 at 20-21.)  In other words, if the Court finds it appropriate to dismiss Plaintiffs' Fourth Amendment claim, Plaintiffs wish instead to pursue their claim under the Fourteenth Amendment.

---

[7] The other Defendants, with the exception of Pojas who is not a government official, are all alleged to be employees of the San Diego Police Department.

There is no legal support for Plaintiffs' substantive due process claim. The Supreme Court made explicitly clear in *Graham* that:

> all claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other "seizure" of a free citizen should be analyzed under the Fourth Amendment and its "reasonableness" standard, rather than under a "substantive due process" approach. Because the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct, that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims.

*Graham*, 490 U.S. at 395 (finding reversible error where appellate court reviewed an excessive force claim under substantive due process standard); *Reed v. Hoy*, 909 F.2d 324, 329 (9th Cir.1989) ("under Graham, excessive force claims arising before or during arrest are to be analyzed exclusively under the fourth amendment's reasonableness standard"), *overruled on other grounds by Edgerly v. City & Cnty. of San Francisco*, 599 F.3d 946, 956 n.14 (9th Cir. 2010); *see also Ward v. City of San Jose,* 967 F.2d 280, 285 (9th Cir. 1991) (holding that "[i]t is reversible error to give a substantive due process instruction in an excessive force case after *Graham*"). Plaintiffs cite no law in support of their effort to restyle their excessive force claim as one substantive due process and the Court finds none. Accordingly, Plaintiffs sixth cause of action must be dismissed.

For the foregoing reasons, the Court **GRANTS** Defendant Torres's motion to dismiss Plaintiffs' fifth and sixth causes of action.

## F.    Qualified Immunity

Alternatively, Defendant argues he is entitled to qualified immunity because the challenged conduct did not violate constitutional rights. (ECF No. 12-1 at 15-18.) Plaintiffs respond that Defendant is not entitled to qualified immunity because his complaint alleges factual allegations supporting clearly established constitutional violations. (ECF No. 14 at 21-24.)

Qualified immunity shields government officials performing discretionary functions from liability for civil damages unless their conduct violates clearly

established statutory or constitutional rights of which a reasonable person would have known. *Anderson v. Creighton*, 483 U.S. 635, 638–40 (1987). "Qualified immunity is 'an entitlement not to stand trial or face the other burdens of litigation.'" *Saucier v. Katz*, 533 U.S. 194, 200 (2001) (*quoting Mitchell v. Forsyth*, 472 U.S. 511 (1985)), *abrogated on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009). This privilege is "an *immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Id.* at 200–01 (*quoting Mitchell*, 472 U.S. at 526).    Thus, the Supreme Court "repeatedly [has] stressed the importance of resolving immunity questions at the earliest possible stage in litigation.*" Id.* at 201 (*quoting Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (*per curiam*)).

In *Saucier*, the Supreme Court established a two-step inquiry for determining whether an official is entitled to qualified immunity.  *Pearson*, 555 U.S. at 232; *Saucier*, 533 U.S. at 201. First, the court was directed to consider whether, "[t]aken in the light most favorable to the party asserting the injury, [ ] the facts alleged show the officer's conduct violated a constitutional right." *Saucier*, 533 U.S. at 201.  If a constitutional right would have been violated were the allegations established, the *Saucier* court instructed lower courts to next examine whether the right was clearly established such that "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  *Id.* at 201–02.  If an officer makes a reasonable mistake as to what the law requires—i.e. the right is not clearly established—the officer is entitled to immunity.  *Id.* at 202–03.  The Supreme Court subsequently determined that "while the sequence set forth [in *Saucier*] is often appropriate, it should no longer be regarded as mandatory." *Pearson*, 555 U.S. at 236. Instead, lower courts may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.*

Because the Court finds that Plaintiffs' Complaint against Agent Torres must be

dismissed for other reasons, the Court declines to decide the issue of whether Agent Torres is entitled to qualified immunity. *See Pearson*, 555 U.S. at 238 (noting that at the pleading stage, "the two-step inquiry 'is an uncomfortable exercise where ... the answer [to] whether there was a violation may depend on a kaleidoscope of facts not yet fully developed'"); *Kwai Fun Wong v. United States*, 373 F.3d 952, 957 (9th Cir. 2004) (recognizing that a motion to dismiss on qualified immunity grounds puts the court in the difficult position of deciding "far-reaching constitutional questions on a non-existent factual record" and that while "government officials have the right ... to raise ... the qualified immunity defense on a motion to dismiss, the exercise of that authority is not a wise choice in every case").

## CONCLUSION

For the foregoing reasons, the court hereby **GRANTS** Defendant Torres's motion to dismiss (ECF No. 12).  The hearing set for May 1, 2015 at 1:30 p.m. is hereby **VACATED** and Plaintiff's Complaint is **DISMISSED WITHOUT PREJUDICE** as to Agent Torres only.

**IT IS SO ORDERED.**

DATED:  April 29, 2015

HON. GONZALO P. CURIEL
United States District Judge