UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE ESTATE OF ANGEL LOPEZ by and through its successors in interest, LYDIA LOPEZ; LYDIA LOPEZ; ANGEL LOPEZ, JR. and HECTOR LOPEZ, by and through their guardian ad litem, LYDIA LOPEZ,<br><br>                                    Plaintiffs,<br><br>v.<br><br>LOU TORRES; ANDREW MILLS; SCOTT HOLSLAG; STEVE RIDDLE; LT LEOS; ALEC POJAS; and DOES 2-30,<br><br>                                    Defendants. | Case No.:  15-cv-0111-GPC-MDD<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>[ECF No. 18] |

## INTRODUCTION

Presently before the Court is a Motion for Judgment on the Pleadings filed by Defendants Scott Holslag, Steve Riddle and Alberto Leos (collectively "Defendants"). (ECF No. 18.)  The parties have fully briefed the motion.  (ECF Nos. 20, 21.)  A hearing was held on October 9, 2015.  (*See* ECF No. 24.)  Having considered the parties submissions and oral arguments, as well as applicable law, the Court **GRANTS** in part and **DENIES** in part Defendants' motion.

## FACTUAL BACKGROUND

This case arises from the shooting death of Angel Lopez ("Lopez") on January 17, 2013. Plaintiffs allege that shortly after 8:00 a.m. on January 17, 2013, a heroin dealer and police informant named Alec Pojas ("Pojas") placed a telephone call to Defendant Lou Torres ("Agent Torres"), a parole agent employed by the California Department of Corrections and Rehabilitation. (Compl. ¶¶ 9, 14, 29, 30, ECF No. 1.) Pojas refused to provide his name, but told Agent Torres that Lopez and his father, Alex Lopez, had kidnapped Pojas and held him prisoner in Apartment 58 of 5444 Reservoir Drive, San Diego, California, for over four weeks. (*Id.* ¶¶ 31, 33-35.) During that time, Lopez and his father allegedly tortured Pojas, leaving his blood on the floor. (*Id.* ¶¶ 36-37.) Pojas informed Agent Torres that Lopez and his father possessed an AK-47 and that Lopez always carried a .25 caliber pistol on his person. (*Id.* ¶¶ 40-41.) Pojas claimed he had finally escaped the night before by jumping from a third floor balcony. (*Id.* ¶ 38.)

Plaintiffs allege that Agent Torres provided the information he learned from Pojas to Andrew Mills, a captain in the Eastern Division of the San Diego Police Department ("Captain Mills"). (*Id.* ¶ 46.) Captain Mills and Agent Torres then relayed the information to Lieutenant Leos ("Lt. Leos") and Sergeant Scott Holslag ("Sgt. Holslag"), also of the San Diego Police Department. (*Id.* ¶¶ 11, 13, 47.) According to Plaintiffs, instead of investigating the reliability and accuracy of the information provided by Pojas, Sgt. Holslag, with Captain Mills's concurrence, contacted the San Diego Police Department's SWAT unit. (*Id.* ¶ 48.) The SWAT officers allegedly were told that a kidnap victim likely was still present in Apartment 58 and was being held by "cartel" members who were armed with AK-47s. (*Id.* ¶ 57.)

Pojas contacted Agent Torres several more times during the morning of January 17, 2013, once informing Agent Torres that he knew Lopez and his father were planning to leave Apartment 58 within forty-five minutes because Pojas had scheduled a meeting with them. (*Id.* ¶¶ 58, 60.) Plaintiffs allege that Captain Mills, Lt. Leos, and Sgt. Holslag, in joint venture with Torres and Detective Steve Riddle ("Detective Riddle"), conveyed this

2

information to the SWAT unit and requested the assistance of the SWAT unit to seize and arrest Lopez at 5444 Reservoir Drive.  (*Id.* ¶¶ 59, 62.)

Later that morning, SWAT units arrived at 5444 Reservoir Drive.  (*Id.* ¶ 64.)  At 12:56 p.m., a car occupied by Lopez and Xavier Lenyoun, the lessee of Apartment 58, left the parking lot.  (*Id.* ¶ 66.)  The SWAT unit maneuvered to stop the car and then pointed machine guns at the occupants.  (*Id.* ¶¶ 66-7.)  Lopez and Xavier Lenyoun fled back into the building.  (*Id.* ¶¶ 67, 69.)  SWAT officers entered the building and Officer Kristopher Walb ("Officer Walb") encountered Lopez in a third floor hallway.  (*Id.* ¶¶ 68-9.).  Officer Walb shouted at Lopez to get down, and Plaintiffs allege that Lopez complied and was in a kneeling position when Officer Walb shot him twice in the back and once in the back of the head with a MP-5 submachine gun.  (*Id.* ¶¶ 69-70.)  Officer Walb later explained in a statement to other police officers that he remembered being told earlier that day that the suspect was always armed with a .25 caliber pistol and that thought went through his mind just before he shot and killed Lopez.  (*Id.* ¶ 72.)  Plaintiffs allege that SWAT officers did not administer first aid to Lopez because they believed persons armed with AK-47s were in nearby Apartment 58.  (*Id.* ¶ 74.)

Subsequent investigation revealed that Lopez was not armed, no one was in Apartment 58, there were no AK-47s in the apartment, and Pojas's blood was not on the apartment floor.  (*Id.* ¶¶ 71, 77.)  None of the neighbors in the apartment building had ever heard any unusual noises or screaming coming from Apartment 58.  (*Id.* ¶ 51.)  Further, the balcony of Apartment 58 was observed to be approximately 23 to 25 feet above the ground.  (*Id.* ¶ 54.)  Plaintiffs allege that Pojas relayed all of this false information to Agent Torres in order to obtain revenge against Lopez for not paying Pojas for some heroin.  (*Id.* ¶¶ 31-2, 77.)  Pojas knew Lopez was on parole and wanted for a parole violation and sought to manipulate police into harming Lopez.  (*Id.*)  Police officers did not locate and identify Pojas until the next day.  (*Id.* ¶ 89.)

//

//

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## PROCEDURAL BACKGROUND

On January 16, 2015, Plaintiffs filed the instant case, alleging various claims under 42. U.S.C. § 1983, as well as wrongful death pursuant to California Civil Code § 377.60 *et seq.*[1]  (Compl. at 20-21, ECF No. 1.)  On January 29, 2015, the Court low-numbered the related case of *The Estate of Angel Lopez, et al. v. City of San Diego, et al.*, 13-cv-2240-GPC-MDD, in which this Court's Order Granting in Part and Denying in Part Defendants' Motion for Summary Judgment is under review with the Ninth Circuit.  (*See* 13-cv-2240-GPC-MDD, ECF. Nos. 59-60.)  Defendants filed an Answer in the instant case on February 10, 2015.  (ECF No. 11.)

On August 10, 2015, Defendants filed a Motion for Judgment on the Pleadings (ECF No. 18.)  Plaintiffs timely opposed the motion on September 4, 2015 (ECF No. 20), and Defendants filed a reply on September 11, 2015 (ECF No. 21).  The Court heard oral argument on the motion on October 9, 2015.  (*See* ECF No. 24.)

## LEGAL STANDARD

Under FRCP 12(c), "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c). The principal difference between motions filed pursuant to Rule 12(b) and Rule 12(c) is the time of filing—a motion for judgment on the pleadings is typically brought after an answer has been filed whereas a motion to dismiss is typically brought before an answer is filed. *See Dworkin v. Hustler Magazine Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989).  Because the motions are functionally identical, the same standard of review applicable to a Rule 12(b) motion applies to its Rule 12(c) analog. *Id.*; *see also Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012) ("Analysis under Rule 12(c) is 'substantially identical' to analysis under Rule 12(b)(6), because, under both rules, a court must determine whether the facts alleged in the complaint, taken as true, entitle the plaintiff to a legal remedy.")

---

[1]  The state law claim for wrongful death is against Defendant Pojas only.  (*See* Compl. ¶¶ 134-38, ECF No. 1.)

15-cv-0111-GPC-MDD

(internal quotations and citation omitted).  Thus, when deciding a Rule 12(c) motion, "the allegations of the non-moving party must be accepted as true, while the allegations of the moving party which have been denied are assumed to be false." *Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc.*, 896 F.2d 1542, 1550 (9th Cir. 1989) (citing *Doleman v. Meiji Mutual Life Ins. Co.*, 727 F.2d 1480, 1482 (9th Cir. 1984); *Austad v. United States*, 386 F.2d 147, 149 (9th Cir. 1967)).  The court construes all material allegations in the light most favorable to the non-moving party. *Deveraturda v. Globe Aviation Sec. Servs.*, 454 F.3d 1043, 1046 (9th Cir. 2006).  "Judgment on the pleadings is proper when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." *Hal Roach Studios*, 896 F.2d at 1550.  Thus, judgment on the pleadings in favor of a defendant is not appropriate if the complaint raises issues of fact that, if proved, would support the plaintiff's legal theory. *Gen. Conference Corp. of Seventh-Day Adventists v. Seventh-Day Adventist Congregational Church*, 887 F.2d 228, 230 (9th Cir. 1989).

The mere fact that a motion is couched in terms of Rule 12(c) does not prevent the district court from disposing of the motion by dismissal rather than judgment. *Sprint Telephony PCS, L.P. v. Cnty. of San Diego*, 311 F. Supp. 2d 898, 903 (S.D. Cal. 2004) (citing *Amersbach v. City of Cleveland,* 598 F.2d 1033, 1038 (6th Cir. 1979)).  Courts have discretion to grant Rule 12(c) motions with leave to amend. *In re Dynamic Random Access Memory Antitrust Litigation,* 516 F. Supp. 2d 1072, 1084 (N.D. Cal. 2007).  Courts also have discretion to grant dismissal on a 12(c) motion, in lieu of judgment, on any given claim. *Id.; see also Amersbach,* 598 F.2d at 1038.

//
//
//
//

# DISCUSSION[2]

## A.   Excessive Force (First Cause of Action)

Defendants argue that Plaintiffs' claim for excessive force fails to state a cause of action because Plaintiffs do not allege that any of the Defendants personally participated as an "integral participant" in the alleged use of excessive force and there is no basis for *respondeat superior* liability under 42 U.S.C. § 1983.  (Mot. J. Pleadings at 8-12, ECF No. 18.)  Defendants also argue that Plaintiffs fail to adequately plead causation.  (*Id.* at 10-11.)  Plaintiffs respond that Defendants are liable as supervisory personnel who were integral participants in the SWAT operation.  (Opp'n at 10, ECF No. 20.)

Excessive force claims relating to police conduct during an arrest must be analyzed under the Fourth Amendment and its reasonableness standard.  *Plumhoff v. Rickard*, __ U.S. __, 134 S. Ct. 2012, 2020 (2014); *Graham v. Connor*, 490 U.S. 386, 394-95 (1989).  Proper application of the reasonableness standard requires a court to assess the specific facts of the case, "including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."  *Id.* 396.  However, this list of factors is not exclusive; the court must "[]examine the totality of the circumstances and consider 'whatever specific factors may be appropriate in a particular case, whether or not listed in *Graham*.'"  *Mattos v. Agarano*, 661 F.3d 433, 441 (9th Cir. 2011) (quoting *Bryan v. MacPherson*, 630 F.3d 805, 826 (9th Cir. 2010)).  The standard is to be applied objectively, without consideration of the officers' "underlying intent or motivation."  *Graham*, 490 U.S. at 397.  The Supreme Court further explained in *Graham* that the analysis must be whether the force was reasonable at the moment it was applied.  *Id.* at 396.  In other words, "[t]he

---

[2]  As an independent ground for dismissal, Defendants argue that Plaintiffs have failed to comply with the Court's scheduling order to join parties in the related case of *The Estate of Angel Lopez et al. v. City of San Diego et al*, in which this Court's Summary Judgment Order is under review with the Ninth Circuit. (*See* 13cv2240-GPC-MDD, ECF. Nos. 59-60.)  Defendants cite no authority supporting a dismissal under these circumstances; nor is the argument properly raised in a motion for judgment on the pleadings.

'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.*

### 1.    Integral Participation

Section 1983 creates a cause of action based on personal participation by a defendant. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) ("Liability under section 1983 arises only upon a showing of personal participation by the defendant"). A person deprives another "of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978). As such, a police officer who is merely a bystander to his colleagues' conduct cannot be found to have caused any injury. *Hopkins v. Bonvicino*, 573 F.3d 752, 770 (9th Cir. 2009); *see also Chuman v. Wright*, 76 F.3d 292, 295 (9th Cir. 1996) (rejecting a jury instruction that allowed the jury to "lump all the defendants together, rather than require it to base each individual's liability on his own conduct"). Instead, a plaintiff must "establish the 'integral participation' of the officers in the alleged constitutional violation." *Jones v. Williams*, 297 F.3d 930, 935 (9th Cir. 2002); *see also Torres v. City of Los Angeles*, 548 F.3d 1197, 1206 (9th Cir. 2008).

Officers who are "integral participants" in a constitutional violation are potentially liable under § 1983, even if they did not directly engage in the unconstitutional conduct themselves. *See Boyd v. Benton County,* 374 F.3d 773, 781 (9th Cir. 2004) ("An officer who does not enter an apartment, but stands at the door, armed with his gun, while other officers conduct the search, can . . . be a 'full, active participant' in the search" and therefore can be subject to § 1983 liability). Officers are not integral participants simply by the virtue of being present at the scene of an alleged unlawful act, however. *Jones*, 297 F.3d at 936; *see also Bryan v. Las Vegas Metro. Police Dep't*, 349 F. App'x 132, 133 (9th Cir. 2009) (finding grant of summary judgment appropriate as to police officers who were merely present when plaintiff was shot). Instead, integral participation requires some *fundamental involvement* in the conduct that allegedly caused the violation. *See id.*; *Boyd,*

7

374 F.3d at 780, 880 (holding that every officer who provided armed backup for another officer who unconstitutionally deployed a flash-bang device to gain entry to a suspect's home could be held liable for that use of excessive force because "every officer participated in some meaningful way" in the arrest and "every officer was aware of the decision to use the flash-bang, did not object to it, and participated in the search operation knowing the flash-bang was to be deployed").

Officers are fundamentally involved in the alleged violation when they provide some affirmative physical support at the scene of the alleged violation and when they are aware of the plan to commit the alleged violation or have reason to know of such a plan, but do not object. *See id.* at 780. While the Ninth Circuit has acknowledged that the "integral participant" rule may extend liability beyond simply those officers who provided "armed backup," it has not extended liability to officers who were not present where the alleged violation occurred. *See, e.g., Hopkins*, 573 F.2d at 770 ("[I]t is clear that an officer who waits in the front yard interviewing a witness and does not participate in the unconstitutional search in any fashion cannot be held liable.").

The parties do not dispute that Officer Walb shot and killed Lopez or that Defendants were not physically present when the alleged excessive force occurred. Rather, Plaintiffs' Complaint premises Defendants' liability on the fact that they failed to conduct a reasonable investigation into the information obtained from an anonymous informant before "putting in motion the events that caused the death of [Lopez]." (Opp'n at 9, ECF No. 20.) Plaintiffs allege that Defendants failed to analyze and investigate the reliability of the information provided by an anonymous informant, which they knew or should have known to be false, before conveying this information with reckless or deliberate indifference to its truth or falsity in a "misleading and inaccurate fashion" which resulted in Lopez' death. (Compl. ¶¶ 102-03, ECF No. 1.)

Even accepting all of Plaintiffs' allegations as true, as the Court is bound to do, *see Thompson*, 295 F.3d at 895, the Court finds no law supporting Plaintiffs' assertion that an officer who was not at the scene of the alleged excessive use of force nonetheless can be

considered an "integral participant" in the constitutional deprivation. *Cf. Torres v. City of Los Angeles*, 548 F.3d 1197 (9th Cir. 2008) (finding that detective who conducted investigation and provided information to arresting officers was not an integral participant in the unlawful arrest because she was not present when the arrest was made); *Bravo v. City of Santa Maria*, 665 F.3d 1076, 1090 (9th Cir. 2011) (concluding that officers who conducted a background investigation, but were not present during SWAT unit's unlawful residential search, were not integral participants); *Cunningham v. Gates*, 229 F.3d 1271, 1290 (9th Cir. 2000), *as amended* (Oct. 31, 2000) (finding that non-present officers could not be held liable for failing to intercede to prevent their fellow officers from shooting the plaintiff); *Monteilh v. County of Los Angeles*, 820 F. Supp. 2d 1081, 1090 (C.D. Cal. 2011) (confirming that officers must "provide some affirmative physical support at the scene of the alleged violation . . ." in order to be considered integral participants). It is undisputed that Defendants were not present when Officer Walb fired on Lopez and did not provide "armed backup" for the SWAT unit. Moreover, Plaintiffs do not allege that Defendants were aware of the plain to commit the alleged violation or had reason to know of such a plan but did not object. *See Boyd*, 374 F.3d at 780. Therefore, the Court finds that Plaintiffs have failed to allege sufficient facts to support their claim that Defendants were integral participants in the alleged violation.

### 2.  Supervisory Liability Under 42 U.S.C. § 1983

Defendants argue that merely alleging that Defendants are superiors of Officer Walb or that Defendants failed to fully investigate the source of information provided by the informant is insufficient and that Plaintiffs must plead personal involvement by Defendants for supervisory liability. (Mot. J. Pleadings a 9, ECF No. 18.) Plaintiffs respond that Defendants were supervisory San Diego Police officials and that they were personal participants in the dissemination of false information which was a proximate cause of Lopez's death. (Opp'n at 10-11, ECF No. 20.)

The law recognizes that personal participation in a constitutional deprivation is not the only predicate for section 1983 liability. *Johnson*, 588 F.2d at 743. Anyone who

1   "causes" any citizen to be subjected to a constitutional deprivation is also liable.  *Id.*  In

2   *Ashcroft v. Iqbal*, decided in 2009, the Supreme Court clarified the requirements for

3   supervisory liability under section 1983.  556 U.S. 662, 676-77 (2009).  In *Iqbal*, Justice

4   Kennedy explained that "[i]n a § 1983 suit . . . where masters do not answer for the torts

5   of their servants—the term 'supervisory liability' is a misnomer" and "[a]bsent vicarious

6   liability, each Government official, his or her title notwithstanding, is only liable for his or

7   her own misconduct." *Iqbal*, 556 U.S. at 677.

8        Justice Kennedy further explained that, just as "purpose rather than knowledge is

9   required to impose [direct] liability on the subordinate for unconstitutional

10  discrimination[,] the same holds true for an official charged with violations arising from

11  his or her superintendent responsibilities." *Id*.  Thus, courts before *Iqbal* generally did not

12  have to determine the required mental state for constitutional violations—"[a] uniform

13  mental state requirement applied to supervisors: so long as they acted with deliberate

14  indifference, they were liable, regardless of the specific constitutional right at issue." *OSU*

15  *Student Alliance v. Ray*, 699 F.3d 1053, 1072-73 (9th Cir. 2012).  *Iqbal* instructed that

16  "constitutional claims against supervisors must satisfy the elements of the underlying

17  claim, including the mental state element, and not merely a threshold supervisory test that

18  is divorced from the underlying claim." *Id.* at 1081 n. 15.  When the underlying

19  constitutional tort does not impose a mens rea (e.g., under the Fourth Amendment), some

20  Ninth Circuit decisions have read the supervisory liability test into Fourth Amendment

21  reasonableness.  *See*, *e.g.*, *Lacey v. Maricopa County*, 648 F.3d 1118 (9th Cir. 2011)

22  (holding that a Sheriff's behavior in a Fourth Amendment false arrest case was

23  unreasonable because "he either knew or should have known that something was amiss"

24  and failed to act).

25       In the years post-*Iqbal*, lower courts have interpreted *Iqbal*'s supervisory liability

26  holding in different ways, with some circuits treating *Iqbal* as a pleading decision, others

27  limiting *Iqbal* to its facts, and others reading *Iqbal* as annihilating supervisory liability to

28  various degrees.  *See* William N. Evans, *Supervisory Liability in the Fallout of Iqbal,* 65

Syracuse L. Rev. 103 at 14 (2014) (collecting cases).  The Ninth Circuit has generally interpreted *Iqbal* in a more limited way.  *Id.* at 29-30.  However, under *Iqbal* and under the Ninth Circuit's more expansive interpretation of supervisory liability in the § 1983 context, the Court finds that Plaintiffs have failed to state a claim predicated on supervisory liability.

In the Ninth Circuit, a defendant may be held liable as a supervisor under § 1983 "if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation."  *Hansen v. Black,* 885 F.2d 642, 646 (9th Cir. 1989).  The requisite causal connection can be established not only by some kind of direct personal participation in the deprivation but also by "set[ting] in motion a series of acts by others[] or knowingly refus[ing] to terminate a series of acts by others, which [a supervisor] knew or reasonably should have known, would cause others to inflict the constitutional injury." *Larez*, 946 F.2d at 646 (citations omitted); *see also Motley v. Parks,* 432 F.3d 1072, 1081 (9th Cir. 2005) (confirming that a supervisor who was the moving force behind acts he knew or reasonably should have known would result in a constitutional injury can be found liable, even when he did not directly participate in the acts), *overruled on other grounds by United States v. King,* 687 F.3d 1189 (9th Cir. 2012).  The critical question is whether it was reasonably foreseeable to a supervisor that the actions of particular subordinates would lead to the rights violations alleged to have occurred.  *See Kwai Fun Wong v. United States*, 373 F.3d 952, 966 (9th Cir. 2004) (citing *Gini v. Las Vegas Metro. Police Dep't,* 40 F.3d 1041, 1044 (9th Cir. 1994) (noting that where official did not directly cause a constitutional violation, plaintiff must show the violation was reasonably foreseeable to him).  "[A] plaintiff must show the supervisor breached a duty to plaintiff which was the proximate cause of the injury."  *Starr*, 652 F.3d at 1207.  The Ninth Circuit has held that this causal connection can be proved by showing the supervisor's "own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others." *Starr,* 652 F.3d at 1208 (quoting *Watkins v. City of Oakland,* 145 F.3d

1087, 1093 (9th Cir. 1998)) (holding that plaintiff's allegations that "the actions or inactions of the person 'answerable for the prisoner's safe-keeping' caused his injury [were] sufficient to state a claim of supervisory liability for deliberate indifference.").

Plaintiffs allege that Defendants failed to analyze and investigate the reliability of the information provided by an anonymous informant, which they knew or should have known to be false, before conveying this information with reckless or deliberate indifference to its truth or falsity in a "misleading and inaccurate fashion" to SWAT, which resulted in Lopez' death.  (Compl. ¶¶ 102-03, ECF No 1.)  The Court finds that Plaintiffs allegations are insufficient to state a claim for excessive force premised on supervisory liability.

As a threshold issue, Plaintiffs do not allege that Defendants were supervisors of or had any authority or control over the SWAT unit or its officers.  Plaintiffs initially allege that Sgt. Holslag, "with the concurrence of Mills," is the one who requested SWAT involvement.  (Compl. ¶ 48, ECF No. 1.)  Plaintiffs state later in the Complaint that "Mills, Leos, and Holslag, with the participation in this joint venture of Torres and Riddle, requested the assistance of the SWAT unit" (*id.* ¶ 62) and that Defendants "caused the deployment of SRT" (*id.* ¶ 95).  Nowhere in the Complaint do Plaintiffs specify the relevant chain of command, what role each Defendant played in conveying unverified information to SWAT and requesting SWAT's engagement, and what authority each Defendant had over the actions of SWAT officers.

Second, Plaintiffs do not allege sufficient facts to find that Defendants "set in motion a series of acts by others . . . which [they] *knew or reasonably should have known*, would cause others to inflict the constitutional injury."  *Larez*, 946 F.2d at 646 (emphasis added).  *Starr*, 652 F.3d at 1208 (quoting *Watkins v. City of Oakland,* 145 F.3d 1087, 1093 (9th Cir. 1998)).  Plaintiffs allege that Defendants requested SWAT involvement without verifying the accuracy of the information provided by an anonymous informant.  Plaintiffs state that Defendants requested the assistance of SWAT and relayed the informant's information to SWAT without confirming its accuracy, including that Lopez was at Apartment 58, Lopez

12

had a .25 caliber pistol on his person, there was an AK-47 present at the apartment, or the plausibility of the informant's story that he was falsely imprisoned for a month and escaped by leaping from a third floor balcony. (*Id.* ¶ 63, 80.) Plaintiffs also allege that Defendants informed SWAT officers that the kidnapping was related to the "cartel" (*id.* 85) and that Defendants continued forward with the operation even when Pojas "suddenly terminated contact with Torres" during the deployment of the operation (*id.* ¶ 94-95). Even assuming the truth of Plaintiffs' allegations, it is not reasonable to infer that Defendants knew or should have known that conveying that information to SWAT and requesting SWAT's engagement would result in a SWAT officer shooting Lopez in the back and head.

Third, even assuming Defendants were supervisors and set in motion the series of acts that ultimately resulted in Lopez's shooting, Defendants did not proximately cause Lopez's death because the actions of the SWAT unit were an intervening event. *(See* ECF No. 12-1 at 7.) Traditional tort law's dictate that an abnormal or unforeseen action that intervenes to break the chain of proximate causality applies in section 1983 actions. *Van Ort v. Estate of Stanewich,* 92 F.3d 831, 837 (9th Cir. 1996); *see also Gutierrez-Rodriguez v. Cartagena*, 882 F.2d 553, 561 (1st Cir. 1989) (confirming that in a § 1983 action, a superseding intervening cause that is reasonably foreseeable will not relieve a defendant of liability, but an "'unforeseen and abnormal' intervention" will break the chain of proximate causation) (quoting *Marshall v. Perez Arzuaga*, 828 F.2d 845, 848 (1st Cir.1987), *cert. denied*, 484 U.S. 1065 (1988)). It was the SWAT team's decision to use submachine guns, to pursue Lopez when he fled into the apartment building, and to shoot him when he allegedly was kneeling in compliance with the Officer Walb's order. Defendants could not have foreseen that highly trained SWAT officers allegedly would use excessive force in attempting to apprehend Lopez. Thus, the Court finds that Plaintiffs do not allege sufficient facts to find that Defendants "set in motion a series of acts by others . . . which [they] knew or reasonably should have known, would cause others to inflict the constitutional injury" (*Larez*, 946 F.2d at 646), demonstrating "a reckless or callous indifference to the rights of others." *Starr,* 652 F.3d at 1208. Officer Walb's use of lethal force was unforeseeable in

light of the information Defendants conveyed to SWAT when requesting SWAT's engagement.

At this stage, the Court **DENIES** Defendants' motion for judgment on the pleadings with respect to Plaintiffs' first cause of action and instead **DISMISSES** their excessive force claim without prejudice.

**B.    Wrongful Death (Second Cause of Action)**

Plaintiffs' second cause of action is for wrongful death under 42 U.S.C. § 1983. (Compl. at 16-17, ECF No 1.)  Defendants contend that wrongful death is a state law claim, which cannot be maintained for two reasons.  (Mot. Summ. J. at 15-16, ECF No. 18.)  First, a valid § 1983 claim must allege violation of a right secured by the Constitution and the laws of the United States, not duties arising in tort.  (*Id.* at 15 (citing *West v. Atkins*, 487 U.S. 42, 48 (1988))).  Second, to the extent Plaintiffs actually seek to assert a state law claim (instead of a claim under § 1983), this too fails because California Code of Civil Procedure 377.60 provides for wrongful death actions based on personal injuries resulting from the death of another, not survival actions that are based on injuries incurred by the decedent.  (*Id.* (citing Cal. Civ. Proc. Code § 377.60).)[3]

In its order granting Defendant Torres's motion to dismiss ("Order"), the Court explained that only a survivor action but not a wrongful death action may be brought under § 1983. (Order at 13 n. 1, ECF No. 16.)  In actions pursuant to 42 U.S.C. § 1983, "the survivors of an individual killed as a result of an officer's excessive use of force may assert a Fourth Amendment claim on that individual's behalf if the relevant state's law authorizes a survival action.   The party seeking to bring a survival action bears the burden of demonstrating that a particular state's law authorizes a survival action and that the plaintiff meets that state's requirements for bringing a survival action." *Moreland v. Las Vegas Metro. Police Dep't,* 159 F.3d 365, 369 (9th Cir. 1998) (internal citations omitted).  *See*

---

[3]  Defendants' second argument is irrelevant as Plaintiffs assert a state wrongful death claim (Seventh Cause of Action) against Pojas only.  (Compl. ¶¶ 134-38, ECF No. 1.)

1    *also* Fed. R. Civ. P 17(b) ("[C]apacity to sue or be sued shall be determined by the law of

2    the state in which the district court is held.").   Under California law, "[a] cause of action

3    that survives the death of the person entitled to commence an action or proceeding passes

4    to the decedent's successor in interest, . . . and an action may be commenced by the

5    decedent's personal representative or, if none, by the decedent's successor in interest." Cal.

6    Civ. Proc. § 377.30.

7         Plaintiffs' second claim is brought on behalf of "All Plaintiffs."  Yet if the underlying

8    constitutional violations alleged are excessive force and seizure without probable cause

9    then the § 1983 claim may not be brought as a wrongful death action to vindicate the rights

10   of Lopez's wife and children because Fourth Amendment rights are personal to the

11   decedent.[4]  *Cf. Moreland*, 159 F.3d at 369.  This claim must be dismissed.  To the extent

12   Plaintiffs also allege wrongful death on behalf of Lopez's estate[5], that claim would be

13   duplicative of Plaintiffs' first claim for relief.

14        Thus, the Court **GRANTS** Defendants' motion as to Plaintiffs' second cause of

15   action.

16   **C.    Right of Association (Third Cause of Action)**

17        Defendants argue that Plaintiffs fail to state a claim for right of association because

18   this cause of action is derivative of the decedent's excessive force claims and Plaintiffs

19   have failed to state a claim for excessive force.  (Mot. J. Pleadings at 16, ECF No. 18.)

20   Alternatively, Defendants contend that Defendants' actions do not satisfy the "shocks the

21   conscience" standard required under the Fourteenth Amendment.  (*Id.* at 17.)  Plaintiffs

22

23   _____

24   [4]  Plaintiffs request that the Court permit Lopez' widow and children to assert the second cause of action
     as their own wrongful death claim "because § 1983 was designed and intended to provide a remedy to the

25   woman whose husband has been murdered and the children whose father has been killed."  (Opp'n at 19,
     ECF No. 20.)  As the Court has explained *supra* and in its Order (ECF No. 16), only a survivor action

26   may be brought in a 42 U.S.C. § 1983 action.  Plaintiffs do not provide any Ninth Circuit precedent to the
     contrary.

27   [5]  Plaintiffs explicitly request that the Court construe the second cause of action as an "action by the Estate
     for vindication of the claim of Angel Lopez for violation of his Fourth Amendment right to be free of

28   excessive force."  (Opp'n at 18-19, ECF No. 20.)

respond that the appropriate standard is the lower standard of "deliberate indifference" because Defendants' conduct took place over a matter of several hours.  (Opp'n at 19, ECF No. 20.)

The same allegations of excessive force giving rise to Lopez's claim, via his estate, also give his spouse and children a substantive due process claim based on their loss of his society and companionship.  *See Smith v. City of Fontana*, 818 F.2d 1411, 1419-20 (9th Cir. 1987), *overruled on other grounds by Hodgers-Durgin v. de la Vina*, 199 F.3d 1037, 1040 n.1 (9th Cir. 1999).  For a loss of association claim to be actionable, the claim "must be based on underlying wrongful governmental conduct that amounts to a constitutional deprivation."  *Corales v. Bennett,* 488 F. Supp. 2d 975, 986 (C.D. Cal. 2007), *aff'd*, 567 F.3d 554 (9th Cir. 2009).  If the court finds that "no underlying dependent constitutional deprivation" was demonstrated, the family relations substantive due process claim also must fail.  *Corales v. Bennett*, 567 F.3d 554, 569 n.11 (9th Cir. 2009).  Because the Court found that Plaintiffs' underlying Fourth Amendment excessive force claim fails, the instant right of association claim also fails.  *See Corales*, 488 F. Supp. 2d at 986 ("In the absence of an underlying constitutional violation, plaintiffs' family relations claim fails").

Furthermore, Plaintiffs fail to allege facts sufficient to set forth a viable substantive due process cause of action.  Spouses and children may assert Fourteenth Amendment substantive due process claims if official conduct deprives them of their liberty interest in the companionship and society of their spouse or parent.  *Lemire v. Cal. Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1075 (9th Cir. 2013); *Morales v. City of Delano*, 852 F. Supp. 2d 1253, 1273-74 (E.D. Cal. 2012).  The Fourteenth Amendment's Due Process Clause creates a right to be free from "executive abuse of power . . . which shocks the conscience."  *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998).  "In determining whether excessive force shocks the conscience, the court must first ask whether the circumstances are such that actual deliberation by the officer is practical."  *Wilkinson v. Torres*, 610 F.3d 546, 554 (9th Cir. 2010) (internal quotations and alterations omitted).  If the officer in question was faced with a time frame where actual deliberation was practical, a plaintiff may establish a

Fourteenth Amendment violation by showing that the officer "acted with deliberate indifference." *Porter v. Osborn*, 546 F.3d 1131, 1137 (9th Cir. 2008); *see also Wilkinson v. Torres*, 610 F.3d 546, 554 (9th Cir. 2010) (holding that "deliberate indifference" is the appropriate standard where the circumstances provide for "actual deliberation"). Otherwise, if the officer "faced an evolving set of circumstances that took place over a short time period necessitating 'fast action,'" a plaintiff must make a higher showing that the officer "acted with a purpose to harm" the plaintiff. *Id.* at 1139 (quoting *Lewis*, 523 U.S. at 853); *Wilkinson*, 610 F.3d at 554 (finding application of the purpose-to-harm standard appropriate where within a matter of seconds a car chase evolved into an accelerating vehicle in close proximity to officers on foot).

"Deliberate indifference occurs when an official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Solis v. County of Los Angeles*, 514 F.3d 946, 957 (9th Cir. 2008). This standard is met by a showing "that a municipal actor disregarded a known or obvious consequence of his actions." *Bryan County v. Brown*, 520 U.S. 397, 410 (1997) (citing *Canton v. Harris*, 489 U.S. 378 (1989)). It does not require that "the conscience of the federal judiciary be shocked by deliberate indifference . . . ." *Kennedy*, 439 F.3d at 1064-65 (quoting *L.W. v. Grubbs*, 92 F.3d 894, 900 (9th Cir. 1996) ("Deliberate indifference to a known, or so obvious as to imply knowledge of, danger, by a supervisor who participated in creating the danger, is enough."). "As the very term 'deliberate indifference' implies, the standard is sensibly employed only when actual deliberation is practical." *Lewis,* 523 U.S. at 851.

The Court finds that the "deliberate indifference" standard is applicable in light of the almost five-hour time frame during which the alleged wrongful conduct occurred. *See, e.g., Lee v. City of Los Angeles*, 250 F.3d 668, 684 (9th Cir. 2001) (applying the deliberate indifference standard where officers had ample time to correct their obviously mistaken detention of the wrong individual, but nonetheless failed to do so). Torres received the anonymous call from Pojas "shortly after 8:00 a.m. on January 17, 2013." (Compl. at 5, ECF No. 1.) Defendants did not "face[] an evolving set of circumstances that took place

over a short time period necessitating 'fast action.'  *Wilkinson*, 610 F.3d at 554.  The timeline suggests that they had opportunity to at least partially investigate the veracity of the anonymous informant's claims before engaging SWAT.

However, the Court finds that Plaintiffs have not sufficiently alleged deliberate indifference.  As discussed in the Court's analysis of Plaintiffs' excessive force claim, Plaintiffs do not allege sufficient facts to suggest that it was foreseeable the SWAT officers would use excessive force.  Plaintiffs allege that Defendants requested the assistance of SWAT and provided SWAT with unverified information that, inter alia, "there was an actual or probable kidnap victim still being held in Apartment 58" (Compl. ¶ 85, ECF 1); the kidnapping was related to the "cartel" (*id.* ¶ 86); the cartel members were armed with AK-47s (*id.* ¶ 57); and that the parolee suspect "was always armed with a .25 caliber pistol" (*id.* ¶¶ 40-41).  Assuming the truth of Plaintiffs' allegations, the law does not support a finding that calling in a highly trained, advanced tactical team and providing it with the alleged information creates an excessive risk that the team will use more force than necessary.  Thus, Plaintiffs do not plead sufficient facts for a finding that Defendants acted with deliberate indifference in light of the circumstances.

At this stage, the Court **DENIES** Defendants' motion for judgment on the pleadings with respect to Plaintiffs' third cause of action and instead **DISMISSES** their right of association claim without prejudice.

**D.    Seizure Without Probable Cause (Fourth Cause of Action)**

Plaintiffs allege that Defendants deprived Lopez of his constitutional rights to be free from seizure without probable cause.  (Compl. ¶¶ 119-25, ECF No. 1.)  Defendants argue that Lopez was a parolee at large and, under California and federal law, probable cause is not required to arrest a parolee for violation of parole.  (Mot. Summ. J. at 18-19 (citing *U.S. v. Rabb*, 752 F.2d 1320, 1324 (9th Cir. 1984); *People v. Kanos*, 14 Cal. App. 3d 642, 648 (1971)).  Plaintiffs respond that the fourth cause of action alleges that defendants were responsible for the use of deadly force, not the arrest of a parolee (which never occurred), and constitutes a seizure without probable cause.  (Opp'n at 19, ECF No.

18

20.)

The Fourth Amendment guarantees that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const., amend. IV.  A person is seized by the police and thus entitled to challenge the government's action under the Fourth Amendment when the officer, "'by means of physical force or show of authority,'" terminates or restrains his freedom of movement, *Florida v. Bostick,* 501 U.S. 429, 434 (1991) (quoting *Terry v. Ohio,* 392 U.S. 1, 19, n. 16 (1968)), "*through means intentionally applied," Brower v. County of Inyo,* 489 U.S. 593, 597 (1989) (emphasis in original).  Apprehension by use of deadly force is a "seizure" subject to the reasonableness requirement of the Fourth Amendment. *Tennessee v. Garner,* 471 U.S. 1, 7 (1985).  It is undisputed that deadly force was employed and thus that Lopez was "seized."  The parties dispute whether the employment of deadly was under these circumstances was reasonable under Fourth Amendment.

To determine whether such a seizure is reasonable, the extent of the intrusion on the suspect's rights under that Amendment must be balanced against the governmental interests in effective law enforcement.  *Id.* at 2.  Plaintiffs allege that Defendants acted without probable cause and caused the use of deadly force resulting in the loss of life "by disseminating false and reliable information as if it were true."  (Compl. ¶¶ 122-23, ECF No. 1.)  Plaintiffs state that "Pojas knew that [Lopez] was on parole and wanted for a parole violation" (*id.* ¶ 32) and that Parole Agent information provided the information Pojas told him to Mills (*id.* ¶ 46), who passed the information from Pojas to Defendants (*id.* ¶ 47).  Defendants are correct that although police officers also must have probable cause before making a warrantless arrest, *Ramirez v. City of Buena Park,* 560 F.3d 1012, 1023 (9th Cir. 2009), an exception to this rule exists for parolees.  While parolees are protected against unreasonable searches and seizures, their Fourth Amendment rights are not as extensive as those of other citizens.  *Sherman v. U.S. Parole Comm'n*, 502 F.3d 869, 873 (9th Cir. 2007).

"Under California and federal law, probable cause is not required to arrest a parolee for a violation of parole.  Warrantless arrests of parole violators are also valid."  *Id.* at 884 (quoting *United States v. Butcher*, 926 F.2d 811, 814 (9th Cir. 1991)).  The rationale for this is that "a parolee 'remains under legal custody,' [so] 'a parole arrest [is] more like a mere transfer of the subject from constructive custody into actual or physical custody, rather than like an arrest of a private individual who is the suspect of a crime.'"  *Id.*  (quoting *United States v. Rabb,* 752 F.2d 1320, 1324 (9th Cir. 1984) (internal quotation marks omitted)).

Thus, if an officer "reasonably believes a parolee is in violation of his parole, the officer may arrest the parolee."[5]  *Rabb,* 752 F.2d at 1324, *abrogated in part on other grounds by Bourjaily v. United States*, 483 U.S. 171 (1987).  "A parole officer is not required personally to effect the arrest or search of his parolee to validate the arrest or search."  *United States v. Butcher*, 926 F.2d 811, 814 (9th Cir. 1991).  The seizure remains legal even if it is carried out by other officers.  *See id.* at 814-15 (agreeing with the California Court of Appeal's determination in *People v. Kanos,* 14 Cal. App. 3d 642, 649 (2nd Distr. 1971) ("that '[p]olice assistance properly may be requested by parole agents for providing protection and for aiding in the apprehension and investigation of a parole violator'")).

Here, Plaintiffs concede that Lopez was wanted for a parole violation.  (Compl. ¶ 32, ECF No. 1.)  As such, he was subject to seizure without probable cause.  *See Sherman,* 502 F.3d at 884.  However, that fact that an officer has probable cause (or does not need probable cause) to make an arrest—and therefore to use some amount of force to seize the suspect—is not enough, standing alone, to allow to officer to do so by using deadly force.  *See Garner*, 471 U.S. at 2 ("The use of deadly force to prevent the escape of all felony

---

[5]  The same is true under California law, which expressly requires prisoners being released on parole to be notified that they are "subject to search or seizure by a probation or parole officer *or other peace officer* at any time of the day or night, with or without a search warrant or with or without cause." Cal. Penal Code Ann. § 3067(b)(3) (West, Westlaw through 2015 Reg. Sess.) (emphasis added).

suspects, whatever the circumstances, is constitutionally unreasonable."). As in other Fourth Amendment contexts, the question is whether the officers' actions are "objectively reasonable" in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation. *See Graham*, 490 U.S. at 398. Nonetheless, the Court, finds that Plaintiffs fail to state a claim for seizure without probable cause for the same reasons Plaintiffs' first cause of action alleging excessive force fails. Plaintiffs do not plead facts sufficient to establish Defendants' liability as "integral participants" or supervisors in the alleged deprivation of Lopez' constitutional right to be free from seizure without probable cause. Furthermore, even assuming Defendants were supervisors and set in motion the series of acts that ultimately resulted in Lopez's shooting, Defendants did not proximately cause Lopez's death because the actions of the SWAT unit were an intervening event.

At this stage, the Court **DENIES** Defendants' motion for judgment on the pleadings with respect to Plaintiffs' fourth cause of action and instead **DISMISSES** their excessive force claim without prejudice.

## E.   Due Process Claims (Fifth and Sixth Causes of Action)

Defendants argue that Plaintiffs' fifth and sixth causes of actions for due process violations must be dismissed because (1) Defendants are not federal employees and the Fourteenth Amendment's Due Process applies only to federal actions, and (2) claims arising from excessive force must be prosecuted under the Fourth and not the Fourteenth Amendment. (Mot. J. Pleadings at 19, ECF No. 18.) Plaintiffs contend that the Fourteenth Amendment applies to Defendants' actions and, while the Fourth Amendment is the exclusive source of analysis for excessive force claims, "a cold-blooded execution of a kneeling man, with intent to impose punishment without invocation of judicial process" violates Fourteenth Amendment Due Process Clause. (Opp'n at 20, ECF No. 20.)

Plaintiffs' fifth cause of action alleges that Defendants violated the Fifth Amendment by depriving Lopez of life without due process of law. (Compl. ¶¶ 127-28, ECF No. 1.) "The Due Process Clause of the Fifth Amendment . . . appl[ies] only to actions

of the federal government—not to those of state or local governments." *Lee v. City of L.A.*, 250 F.3d 668, 687 (9th Cir. 2001) (citing *Schweiker v. Wilson*, 450 U.S. 221, 227 (1981)). Plaintiffs have not alleged that Defendants are federal employees.  To the contrary, Plaintiffs' Complaint states that Sgt. Holslag was an Eastern Division SDPD sergeant, Detective Riddle was a detective with the SDPD, and Lt. Leos was Eastern Division SDPD lieutenant.  (Compl. ¶ 9, ECF No. 1.)  Because Plaintiffs have only alleged actions taken by state officials[7], Plaintiffs fail to state a claim under the Fifth Amendment.

In the sixth cause of action, Plaintiffs allege that Detective Riddle's actions resulted in the imposition of punishment without trial or process. (*Id.* 132.)  Detective Riddle responds that this claim must be dismissed because claims arising from excessive force must be prosecuted under the Fourth Amendment, not the Fourteenth Amendment.  (Mot J. Pleadings at 20, ECF No. 18.)  Plaintiffs counter that the evidence supports not just the excessive use of force but conduct that violated the Due Process Clause of the Fourteenth Amendment.  (Opp'n at 20, ECF No. 20.)

There is no legal support for Plaintiffs' substantive due process claim.  The Supreme Court made explicitly clear in *Graham* that:

> [A]ll claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other "seizure" of a free citizen should be analyzed under the Fourth Amendment and its "reasonableness" standard, rather than under a "substantive due process" approach. Because the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct, that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims.

*Graham*, 490 U.S. at 395 (finding reversible error where appellate court reviewed an excessive force claim under substantive due process standard); *Reed v.* Hoy, 909 F.2d 324, 329 (9th Cir. 1989) ("under *Graham*, excessive force claims arising before or during arrest are to be analyzed exclusively under the fourth amendment's reasonableness standard"), *overruled on other grounds by Edgerly v. City & Cnty. of San Francisco*, 599 F.3d 946,

---

[7]  The other Defendants, with the exception of Pojas who is not a government official, are all alleged to be employees of the San Diego Police Department.

956 n.14 (9th Cir. 2010); *see also Ward v. City of San Jose,* 967 F.2d 280, 285 (9th Cir. 1991) (holding that "[i]t is reversible error to give a substantive due process instruction in an excessive force case after *Graham*"). Plaintiffs cite no law in support of their effort to restyle their excessive force claim as one substantive due process and the Court finds none. Accordingly, Plaintiffs sixth cause of action must be dismissed.

For the foregoing reasons, the Court **GRANTS** Defendants' motion as to Plaintiffs' fifth and sixth causes of action.

## CONCLUSION

For the foregoing reasons, the court hereby orders:

(1)    Defendants' motion for judgment on the pleadings is **GRANTED** with respect to Plaintiffs' SECOND, FIFTH and SIXTH causes of action;

(2)    Defendants' motion for judgment on the pleadings is **DENIED** with respect to Plaintiffs' FIRST, THIRD and FOURTH causes of action. Instead, the Court **DISMISSES WITHOUT PREJUDICE** Plaintiffs' FIRST, THIRD and FOURTH causes of action. Plaintiffs may file an amended complaint as to the FIRST, THIRD and FOURTH causes of action on or before **November 6, 2015**.

**IT IS SO ORDERED.**

Dated:  October 21, 2015

Hon. Gonzalo P. Curiel
United States District Judge

23