1
2
3
4
5
6
7                        UNITED STATES DISTRICT COURT

8                     SOUTHERN DISTRICT OF CALIFORNIA

9

10   THE ESTATE OF ANGEL LOPEZ by            Case No.:  15-cv-0111-GPC-MDD
     and through its successors in interest,
11   LYDIA LOPEZ; LYDIA LOPEZ;               **ORDER**
     ANGEL LOPEZ, JR. and HECTOR
12   LOPEZ, by and through their guardian ad **(1) GRANTING DEFENDANTS'**
13   litem, LYDIA LOPEZ,                      **MOTION TO DISMISS FAC WITH**
                                              **PREJUDICE; and**
14                            Plaintiffs,
15   v.                                       **(2) DENYING AS MOOT**
                                              **DEFENDANTS' MOTION TO**
16   LOU TORRES; ANDREW MILLS;               **STRIKE**
     SCOTT HOLSLAG; STEVE RIDDLE;
17   LT LEOS; ALEC POJAS; and DOES 2-
18   30,                                      [ECF No. 31]
19                            Defendants.
20

21                              **INTRODUCTION**

22         Presently before the Court are a Motion to Dismiss the First Amended Complaint

23   ("FAC") and Motion to Strike the FAC filed by Defendants Scott Holslag, Steve Riddle

24   and Alberto Leos (collectively "Defendants").  (ECF No. 31.)  The parties have fully

25   briefed the motions.  (ECF Nos. 33, 36.)  The Court finds the motions suitable for

26   disposition without oral argument. Civ. L. R. 7.1(d)(1).  Having considered the parties

27   submissions and the applicable law, the Court **GRANTS** Defendants' motion to dismiss

28   without leave to amend and **DENIES AS MOOT** Defendants' motion to strike.

## FACTUAL BACKGROUND

This case arises from the shooting death of Angel Lopez ("Lopez") on January 17, 2013.  Plaintiffs allege that shortly after 8:00 a.m. on January 17, 2013, a heroin dealer and police informant named Alec Pojas ("Pojas") placed a telephone call to Defendant Lou Torres ("Agent Torres"), a parole agent employed by the California Department of Corrections and Rehabilitation.  (FAC ¶¶ 9, 14, 28, 29, 30, ECF No. 1.)  Pojas refused to provide his name, but told Agent Torres that Lopez and his father, Alex Lopez, had kidnapped Pojas and held him prisoner in Apartment 58 of 5444 Reservoir Drive, San Diego, California, for over four weeks.  (*Id.* ¶¶ 31, 33-35.)  During that time, Lopez and his father allegedly tortured Pojas, leaving his blood on the floor.  (*Id.* ¶¶ 36-37.)  Pojas informed Agent Torres that Lopez and his father possessed an AK-47 and that Lopez always carried a .25 caliber pistol on his person.  (*Id.* ¶¶ 40-41.)  Pojas claimed he had finally escaped the night before by leaping from a third floor balcony.  (*Id.* ¶ 38.)

Plaintiffs allege that Agent Torres provided the information he learned from Pojas to Andrew Mills, a captain in the Eastern Division of the San Diego Police Department ("Captain Mills").  (*Id.* ¶ 46.)  Captain Mills and Agent Torres then relayed the information to Lieutenant Leos ("Lt. Leos") and Sergeant Scott Holslag ("Sgt. Holslag"), also of the San Diego Police Department.  (*Id.* ¶¶ 11, 13, 47.)  According to Plaintiffs, instead of investigating the reliability and accuracy of the information provided by Pojas, Sgt. Holslag, with Captain Mills' concurrence, contacted the San Diego Police Department's SWAT unit.  (*Id.* ¶ 48.)

Pojas contacted Agent Torres two or three more times during the morning of January 17, 2013, once informing Agent Torres that he knew Lopez and his father were planning to leave Apartment 58 within forty-five minutes because Pojas had scheduled a meeting with them.  (*Id.* ¶ 60.)  Plaintiffs allege that Captain Mills, Lt. Leos, and Sgt. Holslag, in joint venture with Detective Steve Riddle ("Det. Riddle"), conveyed this information to the SWAT unit and requested the assistance of the SWAT unit to seize and arrest Lopez at 5444 Reservoir Drive.  (*Id.* ¶ 64.)  Det. Riddle went with Agent Torres to meet with Pojas,

who failed to meet or contact them after 11:00 a.m.   (*Id.* ¶ 65.)  Instead of intervening to call off SWAT because of Pojas' facially implausible claims and suspicious conduct evidencing his unreliability, Det. Riddle urged continuation of SWAT's involvement.  (*Id.*)

According to Plaintiffs, Captain Mills, Lt. Leos and Sgt. Holslag "assumed the position of mission leaders for the SWAT operation targeting Lopez" and in that capacity briefed the SWAT officers who were ultimately deployed during the operation, dictated the parameters of the mission, set the goals of the mission, and issued commands to the SWAT officers.  (*Id.* ¶ 49.)  During the briefing to SWAT officers, Sgt. Holslag became identified as the "detective leader" who provided information from the detectives' investigation.  (*Id.* ¶ 50.)  Plaintiffs allege that Defendants Mills, Leos and Holslag "conveyed with absolute certainty to SWAT officers" that Lopez was armed with a .25 caliber pistol, there were hostages in the apartment where an AK-47 was located, and that the incident involved a "cartel."  (*Id.* ¶ 98.)  Plaintiffs contend that it was reasonably foreseeable that SWAT officers would use force, including lethal force, against Lopez "due to the false information disseminated by Defendants based on the structure of SWAT and the training of SWAT officers," including to "trust absolutely in the accuracy and reliability of information conveyed to them; assume that the detectives have done a proper investigation to obtain accurate information; obey all commands of their mission leaders; and to never question information provided by mission leaders."  (*Id.* ¶ 110.)

In the mid-morning, SWAT units arrived at 5444 Reservoir Drive.  (*Id.* ¶ 66.)  Captain Mills, Lt. Leos and Sgt. Holslag caused surveillance to take place in the parking lot.  (*Id.* ¶ 67.)  Captain Mills and Lt. Leos "assumed control of the command post on the scene near the apartment complex."  (*Id.* ¶¶ 10-11.)  Plaintiffs allege that Captain Mills, Lt. Leos and Sgt. Holsglag "exercised operational authority over the SWAT officers and issued orders to the SWAT team."  (*Id.* ¶ 12.)  At 12:56 p.m., a car occupied by Lopez and Xavier Lenyoun, the lessee of Apartment 58, left the parking lot.  (*Id.* ¶ 68.)  The SWAT unit maneuvered to stop the car and then pointed machine guns at the occupants.  (*Id.* ¶¶ 68-69.)  Lopez and Xavier Lenyoun fled back into the building.  (*Id.* ¶¶ 67, 69.)  SWAT

officers entered the building and Officer Kristopher Walb ("Officer Walb") encountered Lopez in a third floor hallway. (*Id.* ¶¶ 70-71). Officer Walb shouted at Lopez to get down, and Plaintiffs allege that Lopez complied and was in a kneeling position when Officer Walb shot him twice in the back and once in the back of the head with a MP-5 submachine gun. (*Id.* ¶¶ 71-72.) Officer Walb later explained in a statement to other police officers that he remembered being told earlier that day that the suspect was always armed with a .25 caliber pistol and that thought went through his mind just before he shot and killed Lopez. (*Id.* ¶ 74.) Plaintiffs allege that SWAT officers did not administer first aid to Lopez because they believed persons armed with AK-47s were in nearby Apartment 58. (*Id.* ¶ 76.)

Subsequent investigation revealed that Lopez was not armed, no one was in Apartment 58, there were no AK-47s in the apartment, and Pojas's blood was not on the apartment floor. (*Id.* ¶¶ 73, 79.) None of the neighbors in the apartment building had ever heard any unusual noises or screaming coming from Apartment 58. (*Id.* ¶ 53.) Further, the balcony of Apartment 58 was observed to be approximately 23 to 25 feet above the ground. (*Id.* ¶ 56.) Plaintiffs allege that Pojas relayed all of this false information to Agent Torres in order to obtain revenge against Lopez for not paying Pojas for some heroin. (*Id.* ¶¶ 31-32, 79.) Pojas knew Lopez was on parole and wanted for a parole violation and sought to manipulate police into harming Lopez. (*Id.*) Police officers did not locate and identify Pojas until the next day. (*Id.* ¶ 91.)

## PROCEDURAL BACKGROUND

On January 16, 2015, Plaintiffs filed the instant case, alleging various claims under 42. U.S.C. § 1983, as well as wrongful death pursuant to California Civil Code § 377.60 *et seq.*[1] (Compl. at 20-21, ECF No. 1.) On January 29, 2015, the Court low-numbered the related case of *The Estate of Angel Lopez, et al. v. City of San Diego, et al.*, 13-cv-2240-GPC-MDD ("*Lopez I*"), in which this Court's Order Granting in Part and Denying in Part

---

[1] The state law claim for wrongful death is against Defendant Pojas only. (*See* Compl. ¶¶ 134-38, ECF No. 1.)

Defendants' Motion for Summary Judgment is under review with the Ninth Circuit.  (*See* 13-cv-2240-GPC-MDD, ECF. Nos. 59-60.)  Defendants filed an Answer in the instant case on February 10, 2015.  (ECF No. 11.)

On August 10, 2015, Defendants filed a Motion for Judgment on the Pleadings (ECF No. 18.)  On October 21, 2015, the Court granted Defendants' motion for judgment on the pleadings with respect to Plaintiffs' SECOND (Wrongful Death (42 U.S.C. § 1983)), FIFTH (Violation of Due Process (42 U.S.C. §1983)) and SIXTH causes of action (Due Process and Right to Jury Trial (42 U.S.C. § 1983)).  (Mot. J. Pleadings Order, ECF No. 25.)  The Court denied Defendants' motion with respect to Plaintiffs' FIRST (Excessive Force (42 U.S.C. §1983)), THIRD (Right of Association (42 U.S.C. §1983)) and FOURTH causes of action (Seizure without Probable Cause (42 U.S.C. §1983)) and instead dismissed those causes of action with leave to amend.  (*Id.*)

On November 15, 2015, Plaintiffs filed the FAC.  (FAC, ECF No. 30.)  On December 4, 2015, Defendants filed the instant Motion to Dismiss and Motion to Strike.  (Mot. Dismiss, ECF No. 31.)  Plaintiffs timely opposed the motions on January 4, 2016 (Opp'n, ECF No. 33), and Defendants filed a reply on January 19, 2016 (ECF No. 36).

## LEGAL STANDARD

**A.    Motion to Dismiss**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint.  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  Dismissal is warranted under Rule 12(b)(6) where the complaint lacks a cognizable legal theory. *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984); *see also Neitzke v. Williams*, 490 U.S. 319, 326 (1989) ("Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law.").  Alternatively, a complaint may be dismissed where it presents a cognizable legal theory yet fails to plead essential facts under that theory.  *Robertson*, 749 F.2d at 534.  While a plaintiff need not give "detailed factual allegations," a plaintiff must plead sufficient facts that, if true, "raise a right to relief above the speculative level."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007).  "To

survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 547).  A claim is facially plausible when the factual allegations permit "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.  In other words, "the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).  "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

In reviewing a motion to dismiss under Rule 12(b)(6), the court must assume the truth of all factual allegations and must construe all inferences from them in the light most favorable to the nonmoving party.  *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002); *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996).  Legal conclusions, however, need not be taken as true merely because they are cast in the form of factual allegations.  *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1200 (9th Cir. 2003); *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).  When ruling on a motion to dismiss, the court may consider the facts alleged in the complaint, documents attached to the complaint, documents relied upon but not attached to the complaint when authenticity is not contested, and matters of which the court takes judicial notice.  *Lee*, 250 F.3d at 688-89.

//
//
//
//
//
//
//
//

15-cv-0111-GPC-MDD

# DISCUSSION[2]

**A.    Provision of False Information After Failure to Investigate an Anonymous Informant's Claims in Violation of the Fourth Amendment (42 U.S.C. § 1983) (First Cause of Action)**

Plaintiffs' first cause of action brought under 42 U.S.C. § 1983—previously titled "Excessive Force"—is now entitled "Provision of False Information After Failure to Investigate an Anonymous Informant's Claims [in Violation of the Fourth Amendment]." (FAC at 1, 22, ECF No. 30.)  The newly titled cause of action relies on the same predicate Fourth Amendment rights previously cited in the Excessive Force claim dismissed by this Court.  (*See, e.g.,* FAC ¶ 127 ("Defendants knew, or should have known, their wrongful acts would cause others to use excessive and unreasonable force on Angel Lopez."), ¶ 130 ("Defendants set in motion acts which led to the necessity of the use of deadly force . . . .")).  Other than deleting two paragraphs from the Excessive Force claim and replacing them with two paragraphs that refer to the reliance placed on the false information relayed to the SWAT team, the Excessive Force and False Information causes of action are identical.  Changing the name of the first cause of action and leaving the salient allegations the same does not change the essence of the claim.  As such, the Court construes Plaintiffs' first cause of action as an excessive force claim.

Defendants argue that Plaintiffs' claim for excessive force again fails to state a cause of action because Plaintiffs do not plead any new allegations sufficient to establish that any moving Defendant personally participated as an "integral participant" in the alleged use of excessive force and there is no basis for *respondeat superior* liability under 42 U.S.C. § 1983.  (Mot. Dismiss at 7-10, ECF No. 31.)  Defendants also argue that Plaintiffs fail to adequately plead a sufficient causal connection between Defendants' allegedly wrongful

---

[2] As an independent ground for dismissal, Defendants argue that Plaintiffs have failed to comply with the Court's scheduling order to join parties in the related case of *Lopez I*, in which this Court's Summary Judgment Order is under review with the Ninth Circuit.  (*See* 13-cv-2240-GPC-MDD, ECF. Nos. 59-60.) Defendants cite no authority supporting a dismissal under these circumstances.

conduct and Lopez' shooting.  (*Id.* at 9-10.)  Plaintiffs offer little resistance to the assertion that they have failed to provide new allegations to support an excessive force claim. Instead, Plaintiffs respond that Defendants are liable as "personal and integral participants in the conduct which led to Angel Lopez' death" (Opp'n at 16, ECF No. 33) and "separately liable for their supervisory conduct" (*id.* at 18).

Excessive force claims relating to police conduct during an arrest must be analyzed under the Fourth Amendment and its reasonableness standard.  *Plumhoff v. Rickard*, __ U.S. __, 134 S. Ct. 2012, 2020 (2014); *Graham v. Connor*, 490 U.S. 386, 394-95 (1989). Proper application of the reasonableness standard requires a court to assess the specific facts of the case, "including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."  *Id.* 396.  However, this list of factors is not exclusive; the court must "[]examine the totality of the circumstances and consider 'whatever specific factors may be appropriate in a particular case, whether or not listed in *Graham*.'"  *Mattos v. Agarano*, 661 F.3d 433, 441 (9th Cir. 2011) (quoting *Bryan v. MacPherson*, 630 F.3d 805, 826 (9th Cir. 2010)).  The standard is to be applied objectively, without consideration of the officers' "underlying intent or motivation."  *Graham*, 490 U.S. at 397.  The Supreme Court further explained in *Graham* that the analysis must be whether the force was reasonable at the moment it was applied.  *Id.* at 396.  In other words, "[t]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."  *Id.*

## 1.    Integral Participation

Section 1983 creates a cause of action based on personal participation by a defendant.  *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) ("Liability under section 1983 arises only upon a showing of personal participation by the defendant").  A person deprives another "of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation."  *Johnson v. Duffy*, 588 F.2d

740, 743 (9th Cir. 1978).   As such, a police officer who is merely a bystander to his colleagues' conduct cannot be found to have caused any injury.   *Hopkins v. Bonvicino*, 573 F.3d 752, 770 (9th Cir. 2009); *see also Chuman v. Wright*, 76 F.3d 292, 295 (9th Cir. 1996) (rejecting a jury instruction that allowed the jury to "lump all the defendants together, rather than require it to base each individual's liability on his own conduct").   Instead, a plaintiff must "establish the 'integral participation' of the officers in the alleged constitutional violation."   *Jones v. Williams*, 297 F.3d 930, 935 (9th Cir. 2002); *see also Torres v. City of Los Angeles*, 548 F.3d 1197, 1206 (9th Cir. 2008).

Officers who are "integral participants" in a constitutional violation are potentially liable under § 1983, even if they did not directly engage in the unconstitutional conduct themselves.   *See Boyd v. Benton County,* 374 F.3d 773, 781 (9th Cir. 2004) ("An officer who does not enter an apartment, but stands at the door, armed with his gun, while other officers conduct the search, can . . . be a 'full, active participant' in the search" and therefore can be subject to § 1983 liability).   Officers are not integral participants simply by the virtue of being present at the scene of an alleged unlawful act, however.   *Jones,* 297 F.3d at 936; *see also Bryan v. Las Vegas Metro. Police Dep't*, 349 F. App'x 132, 133 (9th Cir. 2009) (finding grant of summary judgment appropriate as to police officers who were merely present when plaintiff was shot).   Instead, integral participation requires some *fundamental involvement* in the conduct that allegedly caused the violation.   *See id.*; *Boyd,* 374 F.3d at 780, 880 (holding that every officer who provided armed backup for another officer who unconstitutionally deployed a flash-bang device to gain entry to a suspect's home could be held liable for that use of excessive force because "every officer participated in some meaningful way" in the arrest and "every officer was aware of the decision to use the flash-bang, did not object to it, and participated in the search operation knowing the flash-bang was to be deployed"); *Castaneda v. Douglas Cty. Sheriff's Investigator Rory Planeta*, No. 3:05-cv-0283-LRH-RA, 2007 WL 160816, at *6 (D. Nev. Jan. 17, 2007) (concluding that in order to be considered an integral participant in an excessive force claim an officer "must be performing some function necessary to the completion of a police goal"

(internal citations omitted) and "must continue in his actions despite knowing that the actions ultimately constituting excessive force will occur").

Officers are fundamentally involved in the alleged violation when they provide some affirmative physical support at the scene of the alleged violation and when they are aware of the plan to commit the alleged violation or have reason to know of such a plan, but do not object. *See Boyd,* 374 F.3d at 780. While the Ninth Circuit has acknowledged that the "integral participant" rule may extend liability beyond simply those officers who provided "armed backup," it has not extended liability to officers who were not present where the alleged violation occurred. *See, e.g., Hopkins*, 573 F.2d at 770 ("[I]t is clear that an officer who waits in the front yard interviewing a witness and does not participate in the unconstitutional search in any fashion cannot be held liable."). The Ninth Circuit has refused to allow liability based on a "team effort" theory and has stressed that integral participation is required:

> The underlying problem with a 'team effort' theory is that it is an improper alternative grounds for liability. It removes individual liability as the issue and allows a jury to find a defendant liable on the ground that even if the defendant had no role in the unlawful conduct, he would nonetheless be guilty if the conduct was the result of a 'team effort.'

*Chuman v. Wright*, 76 F.3d 292, 295 (9th Cir.1996). The Ninth Circuit in *Chuman* concluded that a jury instruction, which allowed liability to extend to all of law enforcement team members who executed a search warrant regardless of who ultimately inflicted Fourth Amendment violations, was erroneous. *Id.* at 294-95.

The parties do not dispute that Officer Walb shot and killed Lopez or that Defendants were not physically present when the alleged excessive force occurred. Rather, Plaintiffs' FAC premises Defendants' liability on the fact that they failed to conduct a reasonable investigation into the information obtained from an anonymous informant before "set[ting] in motion the acts which led to the necessity of the use of deadly force." (FAC ¶¶ 101, 128-30, ECF No. 30.) Plaintiffs allege that Defendants failed to analyze and investigate the reliability of the information provided by an anonymous informant, which they knew

or should have known to be false, before conveying this information with reckless or deliberate indifference to its truth or falsity in a "misleading and inaccurate fashion" and seeking the engagement of SWAT, which resulted in Lopez' death.  (*Id.* ¶ 128.)  The FAC additionally alleges that Lt. Leos and Sgt. Holslag "assumed the position of mission leaders for the SWAT operation targeting Lopez" and in that capacity briefed the SWAT officers who were ultimately deployed during the operation, dictated the parameters of the mission, set the goals of the mission, and issued commands to the SWAT officers.  (*Id.* ¶ 49.)  During briefing to SWAT officers, Sgt. Holslag became identified as the "detective leader" who provided information from the detectives' investigation.  (*Id.* ¶ 50.)  Captain Mills and Lt. Leos—"Mills' subordinate and second in command of the SDPD SWAT operation in this case" (*id.* ¶ 10)—"assumed control of the command post on the scene near the apartment complex."  (*Id.* ¶¶ 10-11.)  Plaintiffs allege that the other Defendants were at the command post (*id.* ¶ 152) and that Captain Mills, Lt. Leos and Sgt. Holslag "exercised operational authority over the SWAT officers and issued orders to the SWAT team."  (*Id.* ¶ 12.)

Even accepting all of Plaintiffs' allegations as true, as the Court is bound to do, *see Thompson*, 295 F.3d at 895, the Court finds no law supporting Plaintiffs' assertion that an officer who was not at the scene of the alleged excessive use of force nonetheless can be considered an "integral participant" in the constitutional deprivation.  *Cf. Torres v. City of Los Angeles*, 548 F.3d 1197 (9th Cir. 2008) (finding that detective who conducted investigation and provided information to arresting officers was not an integral participant in the unlawful arrest because she was not present when the arrest was made); *Bravo v. City of Santa Maria*, 665 F.3d 1076, 1090 (9th Cir. 2011) (concluding that officers who conducted a background investigation, but were not present during SWAT unit's unlawful residential search, were not integral participants); *Cunningham v. Gates*, 229 F.3d 1271, 1290 (9th Cir. 2000), *as amended* (Oct. 31, 2000) (finding that non-present officers could not be held liable for failing to intercede to prevent their fellow officers from shooting the plaintiff); *Monteilh v. County of Los Angeles*, 820 F. Supp. 2d 1081, 1090 (C.D. Cal. 2011) (confirming that officers must "provide some affirmative physical support at the scene of

the alleged violation . . ." in order to be considered integral participants).

It is undisputed that Defendants were not present when Officer Walb fired on Lopez in the third floor hallway of the apartment complex and did not provide "armed backup" for the SWAT unit.   Defendants' presence at the command post "near the apartment complex" does not change the analysis.  *See Hopkins*, 573 F.2d at 770 ("[I]t is clear that an officer who waits in the front yard interviewing a witness and does not participate in the unconstitutional search in any fashion cannot be held liable.")  Although Plaintiffs' FAC adds allegations that Lt. Leos and Sgt. Holslag, as mission leaders dictated the parameters of the mission, set the goals of the mission, issued commands to the SWAT officers (FAC ¶ 49, ECF No. 30) and "exercised operational authority over the SWAT officers and issued orders to the SWAT team" (*id.* ¶ 12), nowhere do Plaintiffs allege that the parameters, goals or commands Lt. Leos and Sgt. Holslag issued included injuring or killing Lopez. With respect to the Det. Riddle's role during the alleged violation, the FAC merely states that he was at the command post (assuming he was one of the Defendants Plaintiffs allege was there).  (*Id.* ¶ 152.)  The fact that "SWAT officers rely on information received from other officers and information they have been told about the situation" (*id.* ¶ 105) or that the "image [of Lopes being armed] went through [Officer Walb's] mind before he shot and killed Angel Lopez" (*id.* ¶ 74) does not render Defendants integral participants in the shooting.

Therefore, the Court finds that Plaintiffs have failed to allege sufficient facts to support their claim that Defendants were integral participants in the alleged violation.

## 2.  Supervisory Liability Under 42 U.S.C. § 1983

Defendants assert Plaintiffs failed to support a causal connection between Defendants' conduct and the alleged constitutional violation required for a finding for supervisory liability.  (Mot. Dismiss at 10, ECF No. 31.)  Plaintiffs respond that Defendants are liable for supervisory conduct because they ordered and directed the actions of the SWAT officers.  (Opp'n at 18, ECF No. 33.)  Plaintiffs argue that by providing false information to SWAT officers without verification, Defendants drastically increased the

12

SWAT team's perception that Lopez was armed and dangerous and therefore increased "exponentially" the risk that deadly force would be used. (*Id.* at 19.)

The law recognizes that personal participation in a constitutional deprivation is not the only predicate for section 1983 liability. *Johnson*, 588 F.2d at 743. Anyone who "causes" any citizen to be subjected to a constitutional deprivation is also liable. *Id.* In *Ashcroft v. Iqbal*, decided in 2009, the Supreme Court clarified the requirements for supervisory liability under § 1983. 556 U.S. 662, 676-77 (2009). In *Iqbal*, Justice Kennedy explained that "[i]n a § 1983 suit . . . where masters do not answer for the torts of their servants—the term 'supervisory liability' is a misnomer" and "[a]bsent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Iqbal*, 556 U.S. at 677. In the years post-*Iqbal*, lower courts have interpreted *Iqbal*'s supervisory liability holding in different ways, with some circuits treating *Iqbal* as a pleading decision, others limiting *Iqbal* to its facts, and others reading *Iqbal* as annihilating supervisory liability to various degrees. *See* William N. Evans, *Supervisory Liability in the Fallout of Iqbal,* 65 Syracuse L. Rev. 103 at 14 (2014) (collecting cases). The Ninth Circuit has generally interpreted *Iqbal* in a more limited way. *Id.* at 29-30. However, under *Iqbal* and under the Ninth Circuit's more expansive interpretation of supervisory liability in the § 1983 context, the Court finds that Plaintiffs have failed to state a claim predicated on supervisory liability.

In the Ninth Circuit, a defendant may be held liable as a supervisor under § 1983 "if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Hansen v. Black,* 885 F.2d 642, 646 (9th Cir. 1989). The requisite causal connection can be established not only by some kind of direct personal participation in the deprivation but also by "set[ting] in motion a series of acts by others[] or knowingly refus[ing] to terminate a series of acts by others, which [a supervisor] knew or reasonably should have known, would cause others to inflict the constitutional injury." *Larez*, 946 F.2d at 646 (citations omitted); *see also Motley v. Parks,* 432 F.3d 1072, 1081

(9th Cir. 2005) (confirming that a supervisor who was the moving force behind acts he knew or reasonably should have known would result in a constitutional injury can be found liable, even when he did not directly participate in the acts), *overruled on other grounds by United States v. King,* 687 F.3d 1189 (9th Cir. 2012).  The critical question is whether it was reasonably foreseeable to a supervisor that the actions of particular subordinates would lead to the rights violations alleged to have occurred.  *See Kwai Fun Wong v. United States*, 373 F.3d 952, 966 (9th Cir. 2004) (citing *Gini v. Las Vegas Metro. Police Dep't,* 40 F.3d 1041, 1044 (9th Cir. 1994) (noting that where official did not directly cause a constitutional violation, plaintiff must show the violation was reasonably foreseeable to him).  "[A] plaintiff must show the supervisor breached a duty to plaintiff which was the proximate cause of the injury."  *Starr*, 652 F.3d at 1207.  The Ninth Circuit has held that this causal connection can be proved by showing the supervisor's "own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others."  *Starr,* 652 F.3d at 1208 (quoting *Watkins v. City of Oakland,* 145 F.3d 1087, 1093 (9th Cir. 1998)) (holding that plaintiff's allegations that "the actions or inactions of the person 'answerable for the prisoner's safe-keeping' caused his injury [were] sufficient to state a claim of supervisory liability for deliberate indifference").

Plaintiffs allege that Defendants failed to analyze and investigate the reliability of the information provided by an anonymous informant, which they knew or should have known to be false, before conveying this information with reckless or deliberate indifference to its truth or falsity in a "misleading and inaccurate fashion" to SWAT, which resulted in Lopez' death.  (FAC ¶¶ 128-30, ECF No 30.)  The Court finds that Plaintiffs allegations are again insufficient to state a claim for excessive force premised on supervisory liability.

First, There is no dispute that the anonymous informant provided truthful information regarding Lopez' status as a parolee at large and his address.  In addition, this information was corroborated before the SWAT team was deployed.  These corroborated

facts unquestionably supported the actions to arrest Lopez.  While a 20-20 hindsight review of the incident reveals that Lopez was not armed and there was no AK-47 in the Apartment 58, short of making contact with Lopez and searching his apartment, these allegations could not have been investigated prior to the attempted arrest.

Second, although Plaintiffs' FAC provides additional facts regarding the role Defendants allegedly played in conveying unverified information to SWAT, they are insufficiently vague.   The FAC alleges that Captain Mills ("the person in charge of the SDPD SWAT team in this instance" (*id.* ¶ 9)), Lt. Leos ("Mills' subordinate and second in command" (*id.* ¶ 10) and Sgt. Holslag served as "mission leaders" of the SWAT operation and in that capacity dictated the parameters of the mission, set the goals of the mission, and issued commands to the SWAT officers.  (*Id.* ¶ 49.)   The FAC nowhere identifies the mission parameters, goals, or commands that the "mission leaders" allegedly issued, or otherwise allege facts suggesting that Lt. Leos and/or Sgt. Holslag instructed or encouraged SWAT officers to use more force than necessary under the circumstances.  In fact, the FAC alleges that Captain Mills, Lt. Leos, and Sgt. Holslag "with the participation in this joint venture of Riddle, requested the assistance of the SWAT unit to seize and arrest Lopez." (*Id.* ¶ 64.)  Further, the FAC does not allege that Det. Riddle had any supervisory capacity over SWAT officers at all.  The FAC merely states that Defendants were present at the command post near the apartment building (assuming he was one of the Defendants Plaintiffs allege was there) (*id.* ¶ 152) and that Det. Riddle had an "obligation to intervene—to tell Defendants and the SWAT officers to stand down until Pojas' claim could be verified" (*id.* ¶ 120).

Third, Plaintiffs do not allege sufficient facts to find that Defendants "set in motion a series of acts by others . . . which [they] *knew or reasonably should have known*, would cause others to inflict the constitutional injury."  *Larez*, 946 F.2d at 646 (emphasis added). *Starr,* 652 F.3d at 1208 (quoting *Watkins v. City of Oakland,* 145 F.3d 1087, 1093 (9th Cir. 1998)).  Plaintiffs allege that Defendants requested SWAT involvement and relayed the informant's information without verifying the accuracy of the information, including that

Lopez was at Apartment 58, Lopez had a .25 caliber pistol on his person, there was an AK-47 present at the apartment, or the plausibility of the informant's story that he was falsely imprisoned for a month and escaped by leaping from a third floor balcony. (FAC ¶¶ 65, 82, ECF No. 30.) Plaintiffs also allege that Defendants informed SWAT officers that the kidnapping was related to the "cartel" (*id.* ¶ 87) and that Defendants continued forward with the operation even when Pojas "suddenly terminated contact with Torres" during the deployment of the operation (*id.* ¶ 96). Plaintiffs contend that Defendants knew providing the information they did to SWAT "would cause heightened tension, awareness, and fear, and would give rise to a likelihood of the immediate use of deadly force if Walb or other agents perceived a threat." (*Id.* ¶ 108.) Even assuming the truth of Plaintiffs' allegations, it is not reasonable to infer that Defendants knew or should have known that conveying that information to SWAT and requesting SWAT's engagement would result in a SWAT officer using excessive force.

Plaintiffs' allegations that SWAT officers are trained to "trust absolutely in the accuracy and reliability of information conveyed to them; assume that the detectives have done a proper investigation to obtain accurate information; obey all commands of their mission leaders; and to never question information provided by mission leaders" (*id.* ¶ 110) does not render foreseeable that a trained SWAT officer armed with that information would use more force than necessary under the circumstances. That Officer Walb remembered he had been told earlier that Lopez was always armed just before he shot and killed Lopez (*id.* ¶ 74) or Captain Mills' state of mind prior to the incident (*id.* ¶¶ 99-100) does not suggest that the moving Defendants "set in motion a series of acts by others . . . which [they] *knew or reasonably should have known*, would cause others to inflict the constitutional injury." *Larez*, 946 F.2d at 646.

Plaintiffs also cite to *Bravo v. Santa Maria*, 665 F.3d 1076 (9th Cir. 2011) (Opp'n at 19, ECF No. 33), a case in which the court found that a nighttime incursion by a SWAT force is a far more serious occurrence than an ordinary daytime search pursuant to a regular search warrant, and therefore, to comply with Fourth Amendment, requires higher

16

justification beyond mere probable cause to search.  *Id.* at 1085.  The *Bravo* court followed the well-established rule that exigent circumstances are required to justify a nighttime no-knock entry.  *Id.*  *Bravo* does not require a higher justification before a SWAT team may be mobilized in the arrest of a parolee at large.  The Court is not prepared to set the precedent that the mere act of calling in SWAT makes it foreseeable that excessive force will be exercised.

Fourth, even assuming Defendants were supervisors and set in motion the series of acts that ultimately resulted in Lopez's shooting, Defendants did not proximately cause Lopez's death because the actions of the SWAT unit were an intervening event.  (*See* ECF No. 12-1 at 7.)  Traditional tort law's dictate that an abnormal or unforeseen action that intervenes to break the chain of proximate causality applies in section 1983 actions.  *Van Ort v. Estate of Stanewich,* 92 F.3d 831, 837 (9th Cir. 1996); *see also Gutierrez-Rodriguez v. Cartagena*, 882 F.2d 553, 561 (1st Cir. 1989) (confirming that in a § 1983 action, a superseding intervening cause that is reasonably foreseeable will not relieve a defendant of liability, but an "'unforeseen and abnormal' intervention" will break the chain of proximate causation) (quoting *Marshall v. Perez Arzuaga*, 828 F.2d 845, 848 (1st Cir.1987), *cert. denied*, 484 U.S. 1065 (1988)).  It was the SWAT team's decision to use submachine guns, to pursue Lopez when he fled into the apartment building, and to shoot him when he allegedly was kneeling in compliance with the Officer Walb's order that led to the deprivation of constitutional rights.  Although Plaintiffs allege that Lt. Leos and Sgt. Holslag served as mission leaders of the operation, Plaintiffs do not allege any facts suggesting that they instructed or encouraged SWAT officers to employ more force than necessary under the circumstances.  Defendants could not have foreseen that highly trained SWAT officers allegedly would use excessive force in attempting to apprehend Lopez, even SWAT officers armed with the very information Defendants provided them with.  Thus, the Court finds that Plaintiffs do not allege sufficient facts to find that Defendants "set in motion a series of acts by others . . . which [they] knew or reasonably should have known, would cause others to inflict the constitutional injury" (*Larez*, 946 F.2d at 646),

demonstrating "a reckless or callous indifference to the rights of others." *Starr,* 652 F.3d at 1208. Officer Walb's use of lethal force was unforeseeable in light of the information Defendants conveyed to SWAT when requesting SWAT's engagement.

The Court therefore **GRANTS** Defendants' motion to dismiss with respect to Plaintiffs' first cause of action.

**B.      Right of Association (42 U.S.C. § 1983) (Second Cause of Action)**

Defendants argue that Plaintiffs fail to state a claim for right of association because this cause of action is derivative of the decedent's excessive force claims and Plaintiffs have failed to state a claim for excessive force. (Mot. Dismiss at 10-12, ECF No. 31.) In response Plaintiffs reiterate their arguments in support of their excessive force claim and argue that causation, "defined as a substantial factor in bringing about the result," is sufficiently pled because the FAC alleges that Defendants told Officer Walb that Lopez was always armed, Officer Walb believed this information provided by the mission leader was accurate, and Walb swore that the image of Lopez armed "flashed through his mind in the split-second before he shot." (Opp'n at 21, ECF No. 33.)

The same allegations of excessive force giving rise to Lopez's claim, via his estate, also give his spouse and children a substantive due process claim based on their loss of his society and companionship. *See Smith v. City of Fontana*, 818 F.2d 1411, 1419-20 (9th Cir. 1987), *overruled on other grounds by Hodgers-Durgin v. de la Vina*, 199 F.3d 1037, 1040 n.1 (9th Cir. 1999). For a loss of association claim to be actionable, the claim "must be based on underlying wrongful governmental conduct that amounts to a constitutional deprivation." *Corales v. Bennett,* 488 F. Supp. 2d 975, 986 (C.D. Cal. 2007), *aff'd,* 567 F.3d 554 (9th Cir. 2009). If the court finds that "no underlying dependent constitutional deprivation" was demonstrated, the family relations substantive due process claim also must fail. *Corales v. Bennett*, 567 F.3d 554, 569 n.11 (9th Cir. 2009). Because the Court again found that Plaintiffs' underlying Fourth Amendment excessive force claim fails, the instant right of association claim also fails. *See Corales*, 488 F. Supp. 2d at 986 ("In the absence of an underlying constitutional violation, plaintiffs' family relations claim fails").

Furthermore, Plaintiffs' FAC again fails to allege facts sufficient to set forth a viable substantive due process cause of action.  Spouses and children may assert Fourteenth Amendment substantive due process claims if official conduct deprives them of their liberty interest in the companionship and society of their spouse or parent.  *Lemire v. Cal. Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1075 (9th Cir. 2013); *Morales v. City of Delano*, 852 F. Supp. 2d 1253, 1273-74 (E.D. Cal. 2012).  The Fourteenth Amendment's Due Process Clause creates a right to be free from "executive abuse of power . . . which shocks the conscience."  *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998).  "In determining whether excessive force shocks the conscience, the court must first ask whether the circumstances are such that actual deliberation by the officer is practical."  *Wilkinson v. Torres*, 610 F.3d 546, 554 (9th Cir. 2010) (internal quotations and alterations omitted).  If the officer in question was faced with a time frame where actual deliberation was practical, a plaintiff may establish a Fourteenth Amendment violation by showing that the officer "acted with deliberate indifference."  *Porter v. Osborn*, 546 F.3d 1131, 1137 (9th Cir. 2008); *see also Wilkinson v. Torres*, 610 F.3d 546, 554 (9th Cir. 2010) (holding that "deliberate indifference" is the appropriate standard where the circumstances provide for "actual deliberation").  Otherwise, if the officer "faced an evolving set of circumstances that took place over a short time period necessitating 'fast action,'" a plaintiff must make a higher showing that the officer "acted with a purpose to harm" the plaintiff.  *Id.* at 1139 (quoting *Lewis*, 523 U.S. at 853); *Wilkinson*, 610 F.3d at 554 (finding application of the purpose-to-harm standard appropriate where within a matter of seconds a car chase evolved into an accelerating vehicle in close proximity to officers on foot).

"Deliberate indifference occurs when an official acted or failed to act despite his knowledge of a substantial risk of serious harm."  *Solis v. County of Los Angeles*, 514 F.3d 946, 957 (9th Cir. 2008).  This standard is met by a showing "that a municipal actor disregarded a known or obvious consequence of his actions."  *Bryan County v. Brown*, 520 U.S. 397, 410 (1997) (citing *Canton v. Harris*, 489 U.S. 378 (1989)).  It does not require that "the conscience of the federal judiciary be shocked by deliberate indifference . . . ."

*Kennedy*, 439 F.3d at 1064-65 (quoting *L.W. v. Grubbs*, 92 F.3d 894, 900 (9th Cir. 1996) ("Deliberate indifference to a known, or so obvious as to imply knowledge of, danger, by a supervisor who participated in creating the danger, is enough."). "As the very term 'deliberate indifference' implies, the standard is sensibly employed only when actual deliberation is practical." *Lewis,* 523 U.S. at 851.

The "deliberate indifference" standard is applicable in light of the almost five-hour time frame during which the alleged wrongful conduct occurred. *See, e.g., Lee v. City of Los Angeles*, 250 F.3d 668, 684 (9th Cir. 2001) (applying the deliberate indifference standard where officers had ample time to correct their obviously mistaken detention of the wrong individual, but nonetheless failed to do so). Torres received the anonymous call from Pojas "shortly after 8:00 a.m. on January 17, 2013." (FAC ¶ 29, ECF No. 30.) Defendants did not "face[] an evolving set of circumstances that took place over a short time period necessitating 'fast action." *Wilkinson*, 610 F.3d at 554. The timeline suggests that they had opportunity to at least partially investigate the veracity of the anonymous informant's claims before engaging SWAT.

However, the Court finds that Plaintiffs have not sufficiently alleged deliberate indifference. As discussed in the Court's analysis of Plaintiffs' excessive force claim, Plaintiffs do not allege sufficient facts to suggest that it was foreseeable the SWAT officers would use excessive force. Plaintiffs allege that Defendants requested the assistance of SWAT and provided SWAT with unverified information that, inter alia, a kidnapping had been committed by the "cartel" (*id.* ¶ 86); the cartel members were armed with AK-47s at Apartment 58 (*id.* ¶ 87); and that the parolee suspect "was always armed with a .25 caliber pistol" (*id.* ¶¶ 41, 74). Assuming the truth of Plaintiffs' allegations, there are insufficient facts to show that Defendants disregarded a known or obvious consequence of their actions. It was not known or obvious that calling in a highly trained, advanced tactical team and providing it with the alleged information would create an excessive risk that Lopez would attempt to flee and that the team would use more force than necessary to apprehend him. Thus, Plaintiffs do not plead sufficient facts for a finding that Defendants acted with

deliberate indifference in light of the circumstances.

The Court therefore **GRANTS** Defendants' motion to dismiss with respect to Plaintiffs' second cause of action.

**C.   Seizure (Use of Deadly Force) Without Probable Cause (42 U.S.C. § 1983) (Third Cause of Action)**

Plaintiffs allege that Defendants deprived Lopez of his constitutional rights to be free from seizure without probable cause.  (FAC ¶¶ 139-45, ECF No. 30.)  Defendants argue that Lopez was a parolee at large and, under California and federal law, probable cause is not required to arrest a parolee for violation of parole.  (Mot. Dismiss at 12, ECF No. 31 (citing *Sherman v. U.S. Parole* Comm'n, 502 F.3d 869, 994 (9th Cir. 2007); *U.S. v. Rabb*, 752 F.2d 1320, 1324 (9th Cir. 1984)).  Plaintiffs respond that Defendants acted unreasonably both as integral participants and supervisors.  (Opp'n at 21, ECF No. 33.)  Specifically, Plaintiffs contend that it was reasonably foreseeable that Defendants' actions would "result in a SWAT officer miscalculating in exercising judgment in a stress-fil[l]ed, split-second decision to use fatal force."  (FAC ¶ 144, ECF No. 30.)

The Fourth Amendment guarantees that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."  U.S. Const., amend. IV.  A person is seized by the police and thus entitled to challenge the government's action under the Fourth Amendment when the officer, "'by means of physical force or show of authority,'" terminates or restrains his freedom of movement, *Florida v. Bostick,* 501 U.S. 429, 434 (1991) (quoting *Terry v. Ohio,* 392 U.S. 1, 19, n. 16 (1968)), "*through means intentionally applied,*" *Brower v. County of Inyo,* 489 U.S. 593, 597 (1989) (emphasis in original).  Apprehension by use of deadly force is a "seizure" subject to the reasonableness requirement of the Fourth Amendment. *Tennessee v. Garner,* 471 U.S. 1, 7 (1985).  It is undisputed that deadly force was employed and thus that Lopez was "seized."  The parties dispute whether the employment of deadly

force, under these circumstances, was reasonable under the Fourth Amendment.

To determine whether such a seizure was reasonable, the extent of the intrusion on the suspect's rights under that Amendment must be balanced against the governmental interests in effective law enforcement. *Id.* at 2. Plaintiffs allege that Defendants acted without probable cause and caused the use of deadly force resulting in the loss of life "by disseminating false and unreliable information as if it were true." (FAC ¶¶ 142-44, ECF No. 30.) Plaintiffs state that "Pojas knew that [Lopez] was on parole and wanted for a parole violation" (*id.* ¶ 34) and Parole Agent Torres provided this information to Captain Mills (*id.* ¶ 46), who passed the information on to Lt. Leos and Sgt. Holslag (*id.* ¶ 47). Defendants are correct that although police officers also must have probable cause before making a warrantless arrest, *Ramirez v. City of Buena Park,* 560 F.3d 1012, 1023 (9th Cir. 2009), an exception to this rule exists for parolees. While parolees are protected against unreasonable searches and seizures, their Fourth Amendment rights are not as extensive as those of other citizens. *Sherman*, 502 F.3d at 873. "Under California and federal law, probable cause is not required to arrest a parolee for a violation of parole. Warrantless arrests of parole violators are also valid." *Id.* at 884 (quoting *United States v. Butcher*, 926 F.2d 811, 814 (9th Cir. 1991)). The rationale for this is that "a parolee 'remains under legal custody,' [so] 'a parole arrest [is] more like a mere transfer of the subject from constructive custody into actual or physical custody, rather than like an arrest of a private individual who is the suspect of a crime.'" *Id.* (quoting *Rabb,* 752 F.2d at 1324 (internal quotation marks omitted)).

Thus, if an officer "reasonably believes a parolee is in violation of his parole, the officer may arrest the parolee."[5] *Rabb,* 752 F.2d at 1324, *abrogated in part on other grounds by Bourjaily v. United States*, 483 U.S. 171 (1987). "A parole officer is not

---

[5] The same is true under California law, which expressly requires prisoners being released on parole to be notified that they are "subject to search or seizure by a probation or parole officer *or other peace officer* at any time of the day or night, with or without a search warrant or with or without cause." Cal. Penal Code Ann. § 3067(b)(3) (West, Westlaw through 2015 Reg. Sess.) (emphasis added).

required personally to effect the arrest or search of his parolee to validate the arrest or search." *United States v. Butcher*, 926 F.2d 811, 814 (9th Cir. 1991). The seizure remains legal even if it is carried out by other officers. *See id.* at 814-15 (agreeing with the California Court of Appeal's determination in *People v. Kanos*, 14 Cal. App. 3d 642, 649 (2d Distr. 1971) ("that '[p]olice assistance properly may be requested by parole agents for providing protection and for aiding in the apprehension and investigation of a parole violator'").

Here, Plaintiffs concede that Lopez was wanted for a parole violation. (FAC ¶ 32, ECF No. 30.) As such, he was subject to seizure without probable cause. *See Sherman,* 502 F.3d at 884. However, that fact that an officer has probable cause (or does not need probable cause) to make an arrest—and therefore to use some amount of force to seize the suspect—is not enough, standing alone, to allow to officer to do so by using deadly force. *See Garner*, 471 U.S. at 2 ("The use of deadly force to prevent the escape of all felony suspects, whatever the circumstances, is constitutionally unreasonable."). As in other Fourth Amendment contexts, the question is whether the officers' actions are "objectively reasonable" in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation. *See Graham*, 490 U.S. at 398. Nonetheless, the Court, finds that Plaintiffs again fail to state a claim for seizure without probable cause for the same reasons Plaintiffs' first cause of action fails. Plaintiffs do not plead facts sufficient to establish Defendants' liability as "integral participants" or supervisors in the alleged deprivation of Lopez' constitutional right to be free from seizure without probable cause. Furthermore, even assuming Defendants were supervisors and set in motion the series of acts that ultimately resulted in Lopez's shooting, Defendants did not proximately cause Lopez's death because the actions of the SWAT unit were an intervening event.

The Court therefore **GRANTS** Defendants' motion to dismiss Plaintiffs' third cause of action.

//

//

**D.     Failure to Supervise (42 U.S.C. § 1983) (Fourth Cause of Action)**

Plaintiffs' FAC adds a new cause of action alleging that Defendants Leos and Holslag, "as a matter of custom, practice and policy, failed to supervise their officers to prevent, deter and punish unconstitutional and excessive use of force."  (FAC ¶ 147, ECF No. 30.)  Plaintiffs agree to the dismissal of the fourth cause of action.  (Opp'n at 22, ECF No. 33.)  The Court therefore **DISMISSES** the fourth cause of action.

**E.     Dismissal with Prejudice**

After a party has amended a pleading once as a matter of course, it may only amend further after obtaining leave of the court, or by consent of the adverse party.  FED. R. CIV. P. 15(a).  Amendment under Fed. R. Civ. Pro. 15(a) is discretionary, and is generally permitted with "extreme liberality."  *Chodos v. West Publ'g Co.*, 292 F.3d 992, 1003 (9th Cir. 2002) (quoting *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990)).  When a district court has already granted leave to amend, its discretion in deciding subsequent motions to amend is "particularly broad."  *Wagh v. Metris Direct, Inc.*, 363 F.3d 821, 830 (9th Cir. 2003), *overruled on other grounds by Odom v. Microsoft Corp.*, 486 F.3d 541, 551 (9th Cir. 2007) (en banc); *Griggs v. Pace Am. Group, Inc.*, 170 F.3d 877, 879 (9th Cir. 1999).  "[A] district court need not grant leave to amend where the amendment: (1) prejudices the opposing party; (2) is sought in bad faith; (3) produces an undue delay in litigation; or (4) is futile."  *AmerisourceBergen Corp. v. Dialysist West, Inc.*, 465 F.3d 946, 951 (9th Cir.2006); *see also Chodos*, 292 F.3d at 1003 ("When considering a motion for leave to amend, a district court must consider whether the proposed amendment results from undue delay, is made in bad faith, will cause prejudice to the opposing party, or is a dilatory tactic."); *Foman v. Davis*, 371 U.S. 178, 182 (1962). The factors are not of equal weight.  "Prejudice to the opposing party is the most important factor," *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1387 (9th Cir. 1990); delay alone is insufficient to deny leave to amend.  *United States v. Webb*, 655 F.2d 977, 980 (9th Cir. 1981) (citing *Howey v. United States*, 481 F.2d 1187 (9th Cir. 1973)).

1    Here, Plaintiffs have clearly put forth their best effort at articulating their claims.

2    Plaintiffs' FAC details all of the facts alleged to be relevant to their claims.  The Court has

3    already granted Plaintiffs the opportunity to amend their complaint in this action.  (*See*

4    Mot. J. Pleadings Order, ECF No. 25.)  The instant action arises out of the same incident

5    and set of facts as its earlier case *Lopez I*, in which this Court's Order Granting in Part and

6    Denying in Part Defendants' Motion for Summary Judgment is on appeal with the Ninth

7    Circuit.  (*See* 13-cv-2240-GPC-MDD, ECF. Nos. 59-60.)  In *Lopez I*, Plaintiffs filed an

8    initial complaint and a first amended complaint after the Court granted the parties' joint

9    motion for leave to amend.  (*See id.*, ECF No. 17.)  Thus, there have been four separate

10   complaints arising out of the same incident and set of facts—the shooting of Angel Lopez

11   by Officer Walb.  Furthermore, this is not a case with an evolving or developing factual

12   basis—Plaintiffs have represented to the Court that *Lopez II* is a result of discovery

13   conducted in *Lopez I*.

14   Plaintiffs have had ample opportunities to adequately plead their claims arising out

15   of the shooting incident of Angel Lopez.  The Court cannot conceive of any new facts that

16   could possibly cure the pleading.  The Court finds that leave to amend would be futile in

17   these circumstances and **GRANTS** Defendants' motion to dismiss Plaintiff's FAC with

18   prejudice.

19   **F.     Motion to Strike Irrelevant and Immaterial Allegations**

20   In light of the Court's dismissal of the FAC, the Court **DENIES AS MOOT**

21   Defendants' motion to strike paragraphs 112 through 118 of the FAC.

22   //

23   //

24   //

25   //

26   //

27   //

28   //

**CONCLUSION**

For the foregoing reasons, the court hereby orders:

(1)    Defendants' motion to dismiss is **GRANTED WITH PREJUDICE**;

(2)    Defendants' motion to strike paragraphs 112 through 118 of the FAC is **DENIED AS MOOT**.

**IT IS SO ORDERED.**

Dated:  February 4, 2016

Hon. Gonzalo P. Curiel
United States District Judge

26

15-cv-0111-GPC-MDD